KNIPFER, Respondent, vs. SHAW and another, Appellants.

*December 6, 1932—March 7, 1933.*

618

For the appellant John C. Shaw there was a brief by *Shannon & Higgins* of Kenosha, and oral argument by *Frank J. Shannon.*

For the appellant Joseph Knipfer there was a brief by *Rouiller & Dougherty,* attorneys, and *Thomas A. Byrne* of counsel, all of Milwaukee, and oral argument by *Mr. Byrne.*

For the respondent there was a brief by *Edward J. Ruetz* and *Urban J. Zievers,* both of Kenosha, and oral argument by *Mr. Ruetz.*

The following opinion was filed January 10, 1933:

NELSON, J. Numerous errors are assigned by defendants, but in the view we take of this controversy only two require consideration. A third assignment of error, however, will be discussed, to the end that trial courts may clearly appreciate the importance of having the reporter available

during the deliberations of the jury so that a request by the jury for the reading of testimony may be complied with.

The two contentions to be considered are as follows:

I. Defendant Knipfer contends that under the undisputed evidence it should be held as a matter of law that the plaintiff assumed the risk of injury in riding with him through the dense fog which prevailed at the time of the accident, and that the court erred in denying his motion for judgment notwithstanding the verdict.

II. Defendant Shaw contends that under the undisputed evidence it should be held that the negligence of defendant Knipfer should be imputed to the plaintiff, and that the court erred in denying his motions to direct a verdict and for judgment notwithstanding the verdict.

I. On January 4, 1931, at about six o'clock in the evening, defendant Knipfer and the plaintiff, his wife, left Beloit for Kenosha as their destination. The distance from Beloit to Delavan is about twenty-two miles; from Delavan to Lake Geneva about twelve miles; and from Lake Geneva to the place of collision about twenty-three miles. There was no fog when they left Beloit. However, as they proceeded on their way they encountered fog. When they reached Lake Geneva the fog was so bad that the advisability of proceeding further was discussed. It was decided to go on. After leaving Lake Geneva the fog grew worse. The plaintiff testified that the fog was "terrible." Another witness described the condition as "terribly foggy." All of the witnesses who were present at the time of the accident or shortly thereafter agreed that the fog was very bad. The fog was so dense that neither Knipfer nor Shaw used his headlights. Both cars were driven with only the cowl lights turned on, for the reason that neither driver could see ahead at all when the headlights were on. The fog was so dense as to reflect practically all of the light from the headlights. There was testimony which would have supported a finding that de-

fendant Knipfer at the time of the accident was driving without any lights at all. However, the jury found otherwise, and there is evidence to support that finding. That Shaw's cowl lights were turned on at the time of the accident was not disputed. The plaintiff was riding in the front seat with her husband. She was fully aware of the foggy condition, commented upon it, and clearly must have known of the dangers and hazards incident to traveling under such conditions. At times the fog was so bad that the lights of an approaching car could be seen for a distance of only thirty feet, yet through this fog she and her husband continued to travel without protest on her part and without coercion by her husband. The windows on both the husband's side and her side were lowered so as to permit him to watch the black line and her to watch the edge of the concrete. Both cars were being driven at conservative and careful rates of speed. The first thing that Shaw observed was Knipfer's face when about fifteen feet away. Knipfer did not see the lights on Shaw's car until that car was only five or six feet away. The plaintiff did not see the Shaw car until it was right upon them.

May it be said, with reason and common sense, that a person may ride in a car for many miles under such conditions without fully assuming the risk of injury incident to such a trip? We think not. The plaintiff knew that the fog was so bad that it was possible to see only a few feet ahead. She deemed it necessary to watch the right edge of the concrete in order to assist her husband in keeping the car on his side of the road and prevent its going into the ditch. She knew how difficult it was for her to see objects for any distance ahead and, consequently, knew how difficult it was for her husband to see. Though we have not heretofore had a case before us in which the facts were substantially similar, we feel impelled to hold, under the well established rules applicable to assumption of risk by an occupant of an auto-

mobile, that the plaintiff assumed the risk and, in justice, should not be permitted to recover damages from her husband. *Krueger v. Krueger,* 197 Wis. 588, 222 N. W. 784; *Sommerfield v. Flury,* 198 Wis. 163, 223 N. W. 408; *Page v. Page,* 199 Wis. 641, 227 N. W. 233; *Brockhaus v. Neuman,* 201 Wis. 57, 228 N. W. 477. In all of those cases three elements were present which prevented recovery by a guest: (1) a hazard or danger inconsistent with the safety of the guest; (2) knowledge and appreciation of the hazard by the guest; and (3) acquiescence or a willingness to proceed in the face of the danger. All of these elements were obviously present in this action.

Driving in the nighttime through a fog which is so dense as to render the lights of a car practically useless is quite the same as driving a car in the dark without lights. In such a situation it has been held that a guest is quite as negligent as the driver of the car. *Rebillard v. Minneapolis, St. P. & S. S. M. R. Co.* 216 Fed. 503, L. R. A. 1915 B, 953. Under the law of this state relating to the assumption of risk by an automobile guest, we entertain no doubt that the plaintiff assumed the risk of such obvious dangers and hazards as were incident to proceeding through the dense fog. The motion of the defendant Knipfer for judgment notwithstanding the verdict should have been granted.

II. The jury found that Knipfer was negligent in respect to keeping a sufficient lookout, control of his car, and driving to the left of the center of the highway. The evidence relating to lookout and driving to the left of the center of the highway is sufficient to sustain the verdict in those respects. This being so, have we a situation in which the negligence of the driver should be imputed to the plaintiff and prevent her from recovering against Shaw, the third party, who also was found negligent? In this case we have not the situation which ordinarily exists in a host-and-guest case. The plaintiff was riding in the front seat. The fog conditions were

so bad that she lowered her window that she might watch the right edge of the concrete and actively assist her husband in keeping the car on the right side of the road and away from the ditch. It was undisputed that the plaintiff and her husband discussed the perils and hazards of the trip, and that it was arranged between them that she should watch the edge of the concrete and that he should watch the black line and maintain a lookout ahead. That she delegated to him the duty of watching the black line and looking ahead, and trustingly relied upon him so to do, cannot be questioned. She testified as follows:

"*Q.* Whose suggestion was it that you watch the edge of the concrete? *A.* I think it was my own suggestion.

"*Q.* Did you inform your husband that you were watching the edge of the concrete? *A.* Yes, sir.

"*Q.* Did you suggest or do anything else? *A.* He said he would watch his side of the road.

"*Q.* You were watching the edge of the concrete on your side of the road? *A.* Yes, sir.

"*Q.* Did you rely on your husband to maintain a lookout in front? *A.* Yes, sir.

"*Q.* And on his side of the road? *A.* Yes, sir.

"*Q.* And you were to keep a lookout on your side of the road? *A.* Yes, sir."

The plaintiff's testimony was substantially corroborated by her husband, who testified: "*Q.* Did you request her to watch the edge of the road? *A.* No. *Q.* That was her suggestion and you were to watch the front? *A.* Yes."

In *Reiter v. Grober,* 173 Wis. 493, 181 N. W. 739, which modified the doctrine of imputed negligence as declared in *Prideaux v. Mineral Point,* 43 Wis. 413, and other cases, it was said:

"Only so much of the *Prideaux Case* is overruled as imputes the negligence of the driver to an occupant in a private conveyance who has no control over the driver; is not engaged in a joint undertaking with him; is guilty of no negli-

gence himself; and stands in no other relation to him requiring his negligence to be imputed to the occupant."

It was also there said:

"When and under what circumstances the occupant may be guilty of contributory negligence or engaged in a joint undertaking with the driver or stand in such relation to him that the negligence of the driver may be imputed to him, it is not now necessary to discuss."

In *Brubaker v. Iowa County,* 174 Wis. 574, 183 N. W. 690, it was intimated that there may be such special facts showing agency, or such direction or control over the movements of the husband-driver, as to make the negligence of the husband imputable to the wife and to defeat a recovery by her.

Again in *Calumet Auto Co. v. Diny,* 190 Wis. 84, 208 N. W. 927, it was said:

"The doctrine of imputed negligence applies only in cases where some relation like that of principal and agent, master and servant, or the family relation, exists, so that the act of negligence may be said to be the act of the party injured."

We think under the peculiar facts of this case we are required to hold that the negligence of her husband should be imputed to the plaintiff. Other courts in dealing with somewhat analogous situations have reached the same result.

In *Lundergan v. New York Cent. & H. R. R. Co.* 203 Mass. 460, 89 N. E. 625, 627, each of two occupants of a vehicle, while approaching a railroad crossing, relied upon the other to look for trains approaching from his side. It was there said:

"Neither one took nor attempted to take any precaution against the danger for which the other was looking out. Neither one of them, though knowing all the facts, hesitated to trust his safety to such precautions as might be taken by the other. There was on the part of each a voluntary surrender to the other of all care against any danger coming from the side for which the other made himself responsible."

A verdict ordered for the defendant was held to be right.

In *Allyn v. Boston & A. R. Co.* 105 Mass. 77, *Randolph v. O'Riordon,* 155 Mass. 331, 29 N. E. 583, and *Murray v. Boston Ice Co.* 180 Mass. 165, 61 N. E. 1001, it was held that where one person in a dangerous situation intrusts to another certain care and vigilance, and relies on such other to exercise it, the one must show due care on the part of the other in order that he may recover from a third party.

The motions of the defendant Shaw for a directed verdict and for judgment notwithstanding the verdict should have been granted.

III. After the case had been submitted to the jury, and during their deliberations, they returned into court and informed the court that they had been unable to agree, and expressed a desire to have read to them certain evidence relating to a very vital issue in the case. The reporter was not available, as he had left for his home in Marinette. The court was therefore unable to comply with the jury's request. The jury was compelled to return to the jury room without being enlightened by a reading of the testimony about which there evidently existed a real dispute. This court in *Caryl v. Buchmann,* 177 Wis. 241, 187 N. W. 993, said:

"What has been said as to the necessity of the judge being present at all sessions of the court applies equally to the reporter. He should be where he can be called upon at any time to take down the proceedings."

When a jury is deliberating court reporters should be within calling distance and available in case there is a request from the jury to have some of the testimony read. To have parts of the testimony read to the jury in case a dispute arises during their deliberations as to what the testimony was, is a right which litigants should not be denied. In this case, which was close and hotly contested, and in which the verdict on a number of questions was not unanimous, the failure of the reporter to be present so as to comply with the request of the jury would surely be held to be prejudicial

error. This admonition will no doubt be sufficient for the guidance of trial courts in the future.

*By the Court.*—The judgment of the circuit court is reversed, with directions to dismiss the complaint.

The following memorandum was filed March 7, 1933:

PER CURIAM. It is contended by defendant Knipfer, on motion for rehearing, that the mandate of the court entered herein should also have dismissed the cross-complaint of defendant Shaw. With this contention we agree. The mandate is therefore amended to read:

*By the Court.*—The judgment of the circuit court is reversed, with directions to dismiss both the complaint and cross-complaint.