CUMMINGS, Respondent, vs. NELSON and another, Appellants.

*October 12—November 7, 1933.*

For the appellant Nelson there was a brief by *Thompson, Myers & Helm,* and oral argument by *Samuel Myers* and *Peter J. Myers,* all of Racine.

For the appellant Jorgensen Construction Company there was a brief by *Hannan, Johnson & Goldschmidt* of Milwaukee and *Whaley & Paulsen* of Racine, and oral argument by *Vilas H. Whaley.*

*J. M. Weisman* and *E. O. Gilday,* both of Racine, for the respondent.

NELSON, J.   A short time prior to September 9, 1931, the plaintiff learned through a mutual friend of hers and Nel-

son's that Nelson was about to make an automobile trip from Racine, Wisconsin, to a certain town in Minnesota, via the city of St. Paul. The plaintiff was desirous of visiting her mother who lived in that city. It was arranged that she accompany Nelson as his guest. They left Racine at about eleven o'clock on the morning of September 9th. The trip was uneventful until they reached a point on U. S. highway No. 10, where that highway intersects a north-and-south highway, which runs on the line between Wood and Clark counties. From that point westerly along highway 10 the Jorgensen Construction Company, hereafter called the company, had been engaged for some time in constructing a concrete road. Concrete had been laid for some distance to the west of the intersection mentioned but the highway had not been opened to public travel. From the time that the construction work started the company maintained a barrier across highway 10 for the purpose of closing that highway to public travel. The contract which the company had with the state of Wisconsin required it to provide, erect, and maintain necessary barriers, suitable and sufficient warning lights, torches, danger signals, and to take necessary precautions for the safety of the public. The contract, among other things, provided: "all barriers and obstructions shall have suitable warning lights or torches at night and all lights for that purpose shall be kept burning from sunset to sunrise." The barrier erected and maintained by the company consisted of a section of standard snow fence, i. e. wooden strips interlaced with wires, sufficiently long when in position to extend across and block the highway. The fence was painted with black and white horizontal stripes nine inches wide. Each end of the fence was attached to a perpendicular angle-iron post driven into the ground. Its center was supported by a three-legged brace. As the company's camp was located several miles distant from the intersection, the company employed a young man named

Shaefer, who resided a short distance north of the barrier, to attend to the matter of placing a light on it each night. The company furnished but one lantern or torch at any given time for such purpose. The usual warning signs were erected by the highway commission contemporaneously with the closing of the highway. At a point about five hundred feet to the east of the intersection and on the north side of the concrete there was a yellow sign twenty-three inches square, on which were painted in large black letters the words "Road Closed." At a point about one hundred fifty feet nearer to the intersection and on the north side of the road was another yellow sign of like size, on which were painted in large black letters the words and figures "Detour 10" and a bent arrow pointing to the south. On each side of the highway just east of the intersection was a white sign forty inches long and twenty inches wide on which were painted the words "Detour 10" and a large arrow pointing to the south. On the barrier was placed the standard "Road Under Construction—Road Closed" sign which was forty inches long and twenty inches wide. Highway 10 to the east of the intersection is concreted and is straight for a distance of about seven miles. The accident occurred at about 7:30 o'clock at night. It was dark and it was raining a little. The Nelson car was equipped with one automatic windshield wiper which was efficiently working at the time of the accident. Nelson testified that he had no trouble in seeing through that part of the windshield upon which the wiper was working. Vision through the remainder of the windshield was impaired by drops of rain and moisture. Nelson did not observe any of the signs hereinbefore described and did not see the barrier until almost upon it. He then applied his brakes, causing his automobile to skid in a southeasterly direction and into the perpendicular angle-iron post located about two feet from the

south line of the new concrete. The car tipped over on its left side resulting in the plaintiff's injuries.

It should be noted here that numerous accidents had occurred at this particular place following the closing of the highway and the erection of the barrier. The barrier had been knocked down repeatedly by automobiles running into it. During the night before the accident herein the barrier was knocked down and the lantern placed thereon was broken. On September 9th the accident of the preceding night was reported to the company, and Shaefer, whose duty it was to attend to the light, was given a "bomb torch" to use at the barrier in question. Early in the evening of September 9th he lighted the bomb torch and placed it in front of the barrier. When he lighted it it flared up for a distance of about two feet, then settled down and was apparently burning all right when he left it. It however burned for only a short time and then went out. About ten minutes before the accident here considered the barrier was knocked down by another car evidently being driven at a high rate of speed, so that when Nelson approached the intersection the barrier on the left half of the road was lying flat on the ground; the right half of the barrier sloped from the center of the road up to a height of about two feet.

The jury found that the company failed to exercise ordinary care (1) with respect to providing and maintaining a suitable and sufficient barrier, (2) with respect to providing and maintaining suitable warning signals and signs, (3) with respect to providing and maintaining, from sunset to sunrise, suitable and sufficient warning lights or torches, but acquitted it of any negligence with respect to the placing or allowing the angle-iron post or the wooden jack to be in the highway. The jury also found that each of such failures to exercise ordinary care was a cause of the plaintiff's injuries, and that the company ought, in the exercise

of ordinary care, to have anticipated that an accident and injury might probably follow.

The jury also found that Nelson, just prior to the accident, failed to exercise ordinary care not to increase the danger which the plaintiff assumed upon entering the automobile, with respect to the speed he was traveling, the lookout he was maintaining, and the management and control of his automobile; that each of such failures was a cause of the accident and plaintiff's injuries and that he ought, in the exercise of ordinary care, to have anticipated that an accident and injury might probably result.

The jury further found that the plaintiff did not fail to exercise ordinary care with respect to maintaining a proper lookout but did fail to exercise ordinary care with respect to protesting against the rate of speed at which the automobile was being driven; that such failure to protest contributed to cause the accident and that she ought to have foreseen, in the exercise of ordinary care, that an accident and injury to herself might probably follow. The jury also found that the plaintiff assumed the risk incident to riding in Nelson's automobile. The jury assessed the damages sustained by the plaintiff and determined the percentages of negligence under the comparative negligence law.

The usual motions after verdict were made by the parties. The trial court changed the answers which found the plaintiff guilty of contributory negligence and that she assumed the risk of riding in Nelson's automobile, from "Yes" to "No," and upon the verdict as so changed ordered judgment in favor of the plaintiff and against both defendants for the amount of the damages found. Neither defendant assails the verdict as to the damages found. Nelson makes no contention in his brief with respect to the findings of the jury as to his failure to exercise ordinary care. His principal contentions are that the court erred in changing

the answers of the jury which found (1) that the plaintiff was guilty of a want of ordinary care which contributed to the accident by failing to protest as to the rate of speed at which the car was being driven, and (2) that the plaintiff assumed the risk incident to riding in Nelson's automobile. As to Nelson's first contention, we think the trial court was right in changing the answer. There is no evidence in the record tending to show that Nelson at any time on the trip operated his automobile at an excessive rate of speed or at a rate of speed reasonably calculated to give rise to any concern on the part of the plaintiff or to any thought of danger. The testimony is undisputed that on the trip Nelson drove his automobile at a speed of about thirty-five to forty miles per hour and slowed down somewhat after it started to rain. Disinterested witnesses residing on highway 10 a short distance from the place of the accident testified that Nelson's automobile was being driven at about twenty-five to thirty miles per hour when passing their house. The speed maintained by Nelson just immediately before the accident was obviously too fast considering the fact that it was necessary for him to make an abrupt turn into the detour, but the plaintiff had no knowledge of the abrupt turn and could not have seen the road signs from where she was sitting because of the rain and moisture on the windshield and window of the car. We find nothing in the record justifying the conclusion that she remained silent when she should have protested. We think the answer of the jury finding her guilty of contributory negligence because she did not protest is wholly unsupported by the evidence.

As to Nelson's second contention that the court erred in changing the answer which found that the plaintiff assumed the risk in riding in Nelson's automobile, we think it is without merit. Nelson as the driver of the automobile owed

to the plaintiff the duty to exercise ordinary care to maintain a proper lookout. That duty was unaffected by the rule as to the qualified care which a host owes to his guest. *Poneitowcki v. Harres,* 200 Wis. 504, 228 N. W. 126. Upon entering the car the plaintiff did not assume the risk of Nelson's failure to exercise ordinary care to maintain a proper lookout. Argument is further made that since the plaintiff knew that Nelson had driven about two hundred miles and might be somewhat fatigued, resulting in diminishing his powers of concentration, since she knew at the start of the trip that a part of it would have to be made after dark and since she knew that it was raining, it should be held that the jury was justified in inferring that the plaintiff assumed all of the risks of that particular trip. The weakness of that contention is that there is no evidence that Nelson was fatigued, that his powers of concentration were in fact diminished, or that his vision was impaired by the drizzling rain. Quite the contrary appears from the evidence. We have no such conditions in this case as existed in *Knipfer v. Shaw,* 210 Wis. 617, 246 N. W. 328, 247 N. W. 320, where an automobile trip was conducted in spite of a fog so dense as to render the lights of the automobile worse than useless.

The company contends that the trial court should have granted its motion to change the answers of the jury which found it negligent in the several respects stated. The contention is very persuasive as to the findings of the jury with respect to (1) failure to provide and maintain a suitable and sufficient barrier, and (2) failure to provide and maintain suitable warning signs. The trial court was of the opinion that the finding of the jury as to the failure of the company to provide and maintain suitable lights at or near to the barrier from sunset to sunrise was supported by the evidence and that that finding, together with the other findings that such failure was a cause of the accident, etc.,

was sufficient to support a judgment in plaintiff's favor against the company. In the view we take we need not discuss the law applicable to a situation involving the removal or destruction of a suitable barrier by a trespasser or another without the knowledge of the person whose duty it is to provide and maintain it, sufficient time not having elapsed after its removal or destruction to support the inference that in the exercise of ordinary care the person responsible for the maintenance of the barrier ought to have discovered that it had been removed or destroyed, and remedied it. *Raymond v. Keseberg,* 91 Wis. 191, 64 N. W. 861.

We think under all the facts and circumstances of this case the finding of the jury as to the company's failure to exercise ordinary care with respect to providing and maintaining suitable lights is supported by the evidence. The defendant company knew that immediately to the east of the intersection was a straight seven-mile stretch of concrete; that the detour turn was an abrupt right-angle turn; that numerous accidents had occurred at that barrier during the two months immediately preceding this accident and that it had been warned both by Shaefer and his mother as to the ineffectiveness of a single lantern or light to prevent accidents. We think these undisputed facts gave rise to a jury question as to whether the company, under all of the circumstances, exercised ordinary care in respect to providing and maintaining suitable lights at the barrier in question. In a situation such as is revealed by the evidence in this case, a contractor ought not to be permitted to assert that he had discharged his duty to the traveling public as a matter of law when he has placed a single light or lantern at a barrier constructed at such a dangerous place. A single torch or lantern may go out or become broken. A single light obviously is not as effective as several lights. With several lights there is little likelihood that all of them will be destroyed or extinguished.

In the view we take we do not reach the question as to whether the doctrine of *res ipsa loquitur* is properly applicable to the bomb torch which when lighted by Shaefer flared up at first, burned all right for a short time and then went out, but which, upon being relighted, after its cap had been adjusted by one who was at the place of accident, shortly after it occurred, continued to burn throughout the remainder of the night.

*By the Court.*—Judgment affirmed.