WALKER and others, Plaintiffs, vs. KROGER GROCERY & BAKING COMPANY and others, Defendants. [Cross-appeals.]

*November 7, 1933—April 3, 1934.*

520

For the plaintiff Walker there was a brief by *Sanders & McCormick,* and oral argument by *A. J. Sanders* and *Martin R. Paulsen,* all of Milwaukee.

For the plaintiff Iselin and others there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Oscar T. Toebaas.*

For the defendants there was a brief by *Olin & Butler,* attorneys, and *C. G. Mathys* of counsel, all of Madison, and oral argument by *Mr. Mathys.*

The following opinion was filed February 6, 1934:

FRITZ, J. The plaintiffs Walker, Iselin, and Bashaw were injured at about 6 p. m. on a dark, foggy night in December, 1931, when an east-bound automobile operated

by Walker, and in which Iselin, Bashaw, and Joseph Trossen were riding as guests, ran squarely into the rear end of a truck. That truck, while used by the defendant Hegley in hauling a seventy-eight hundred pound load for his employer, the defendant Kroger Grocery & Baking Company, had become disabled at about three o'clock p. m. while he was traveling eastward, on the south half of a twenty feet wide concrete roadway near Cambridge, Wisconsin. He had halted the truck upon hearing a rumbling noise at the right rear wheels, and, upon inspection, he found that three out of six studs, by which the wheels were fastened, were broken, and that the other three were stripped but still in place. Without attempting to move the truck from the concrete roadway, he ran it back and forth until he had the rear thereof properly placed over a jack, which he had set on the concrete, and there he left it on the south half of the roadway until it was repaired after the plaintiffs had collided with it. Meanwhile he had raised the truck on the jack, and thereupon the outer of the two right rear wheels had fallen off. He then walked to Cambridge and telephoned for help to E. F. Showen, a mechanic employed by the Kroger Grocery & Baking Company at Madison. Showen reached the truck at 4:30 p. m. Instead of attempting to repair the studs at a shop in Cambridge, he drove back to Madison to repair them, and he did not return to the truck until after the collision occurred. The truck had a tail light underneath, and about three and one-half feet from the rear, and eighteen inches from the left side of its platform. That light was lit at the time of the collision, but the evidence is conflicting as to the extent to which it was visible. There was no clearance signal light or reflective signal on the rear of the truck, as required by sec. 85.06 (3), Stats., on motor vehicles having a width in excess of eighty inches, although the body of the truck was ninety-five inches wide.

Plaintiffs, with Walker driving, had been traveling at the rate of thirty-five to forty miles per hour since they left Madison. Walker and Iselin, who sat on the front seat with him and was helping keep a lookout, realized that because of the fog the headlights on Walker's car did not enable them to see beyond fifty feet ahead of that car, and that it was dangerous to drive. They did not see the truck or its tail light until they were within forty or fifty feet of it. Then, although Walker applied his brakes immediately and reduced his speed to five or ten miles per hour, he was so near to the truck that he could not stop, in view of the speed at which he had been approaching, before running into the truck. On the other hand, he could not turn to his left, to pass to the north of the truck, because he saw that an oncoming car was about to pass the truck on that side.

The court directed the jury to find that the defendants were negligent in not having a clearance signal; and the jury found that they were also negligent in failing to give an adequate warning; as to the stopping position of the truck on the highway; and as to removing the truck therefrom. The jury also found that defendants' negligence in each of those respects, including the failure to have a clearance signal, was a cause of the accident.

Defendants contend that the absence of such a reflective signal as would have satisfied the requirements of sec. 85.06 (3), Stats., was not a proximate cause of the accident under the existing circumstances, and that that statute was not applicable because it was intended only for the benefit of those who, while overtaking and attempting to pass a vehicle, collided with it because, due to the absence of a clearance signal on the overtaken vehicle, they were unaware of its extraordinary width. As the evidence necessitates the conclusion that the absence of a reflective signal was not a

proximate cause, under the circumstances in this case, there is no need at this time to consider that second contention. The evidence established, without conflict, that because of the fog the rays of the headlights on Walker's car did not penetrate beyond fifty feet ahead of the car. Consequently, even if there had been a reflective signal on the rear of the truck, it would not have been visible or disclosed the presence of the truck until it was within that fifty feet range of Walker's headlights. That distance, at the speed at which Walker was approaching, was too short to enable him to stop. By the time a reflective signal would have become illuminated and observable from Walker's car by virtue of the rays of his headlights, the collision would have been unavoidable. It would not have been rendered avoidable by the mere presence of an unilluminated reflective signal, but very likely would have occurred just the same because of the speed at which Walker was approaching, and the proximity of the vehicles before any reflective signal would have been observable from Walker's car under the circumstances.

Defendants contend that there was no evidence to support the jury's finding that they were negligent because of their failure to give adequate warning that the truck was on the roadway. There was no warning in that respect excepting such as was afforded by the tail light, and the evidence as to the adequacy of that light, at the time of the collision, is conflicting. It was lit and, when clean, as it was observed to be after the collision, it was visible from an automobile while approaching from eight hundred feet to within fifty feet. However, slush and dirt had splashed on the tail light while *en route* from Madison over wet concrete, and Lester Jarlsberg, who examined the light immediately after the collision, testified that, while there was a red reflection on the concrete below the truck, he could not see the lens or the light. Walker and Iselin testified that they were look-

ing ahead as they approached, but could not see that tail light until they were within sixty feet, although Walker had been able to see the tail light of another automobile, which he had overtaken shortly before, when he was from two to three hundred feet of it, and before the rays from his headlight contacted with it. Trossen, who sat in the rear seat of Walker's car, testified that the tail light seemed to be muddy and dirty before the collision, but that it was nice and bright after he returned from Cambridge, where he had gone for medical attention. In view of that evidence, it was for the jury to decide whether that light was adequate at the time of the collision. If it was muddy and dirty, and not sufficiently observable, then the jury was warranted in finding that it was inadequate, and that Hegley and his employer were negligent in that respect. Likewise, if but shortly prior to the collision the tail light of another overtaken vehicle was observable to Walker when it was two to three hundred feet away, then it was within the province of the jury to find that the inadequacy of the truck's tail light and the defendants' negligence in that respect was a cause of the collision.

Defendants further contend that they were not negligent in stopping the truck on the concrete because an emergency confronted Hegley, and that the stopping of the truck was not a cause of the collision. Likewise, it is contended that Hegley was not negligent in failing to remove the truck, and that that failure was not a cause of the collision. Although it is true that the shoulder of the highway was soft and muddy opposite the place where Hegley left the truck stand on the concrete, there was proof that ten rods further east there was a private driveway which led off to the north of the roadway. There was also proof that after first halting the truck because of the rumbling noise, Hegley moved it backward and forward three or four times to place it over

the jack, and the defendants' mechanic Showen testified that the three remaining studs were sufficient to keep the wheels in place on the truck so that it might have run five or ten miles in that condition. If that was correct, then the truck could have been driven at least the distance of ten rods on to the private driveway, and in view of that evidence, it was for the jury to determine whether the defendants were negligent in stopping the truck on the concrete roadway for several hours, or in failing to remove it therefrom; and whether such negligence was a cause of the accident.

Sec. 85.19 (1), Stats., provides that:

"No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway of such highway, provided that in no event shall any person park, stop or leave standing any vehicle . . . unless a clear and unobstructed width of no less than fifteen feet upon the roadway of such highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon. . . ."

And sub. (8) of that section provides that it is not applicable when a vehicle "is disabled while on the highway in such a manner or to such extent that it is impossible to avoid stopping or temporarily leaving such vehicle in such position."

It is obvious that that statute as to parking, stopping, or leaving a vehicle standing upon a highway was not to be considered applicable when a vehicle became disabled to such an extent that it was impossible to avoid temporarily stopping or leaving it standing on the highway. Proper instructions to that effect were given to the jury by the trial court in relation to the questions in the verdict on those issues. In so far as the word "stopping," which was used in the special verdict, might be considered to mean merely the first

halting of the movement of the truck to enable Hegley to ascertain the cause of the rumbling, the jury was rightly informed that such temporary stopping was not unlawful, and did not constitute negligence which could be considered a cause of the collision. However, the "stopping" when considered to mean and include the conduct which commenced with finally bringing the truck to a standstill and continuing it in that standstill status until the collision occurred, could under the evidence be considered a violation of the statute, and negligence which constituted a proximate cause. Used in that sense "stopping" includes also "failing to remove," which was the term used in another question of the verdict. One question as to negligence in that respect, either by referring to the conduct as "stopping" or as "failing to remove," would have been sufficient. But as the jury, in answer to both questions, found that the defendants were negligent, and that such negligence under each finding was a proximate cause, no error resulted, although the questions overlapped in substance. As the evidence warranted a finding that Hegley, in the exercise of ordinary care, could find and should have removed the truck from the concrete roadway before jacking it up, it was within the province of the jury to find that, because of his failure to do so, he was equally negligent with his employer. The latter, in addition, could also be considered negligent in that respect because of the delay caused by its mechanic in taking the studs back to Madison for repair, instead of doing that work in a shop in the near-by village of Cambridge.

It follows that, as far as the defendants are concerned, the jury's verdict was warranted by the evidence in all respects, excepting the finding that defendants' negligence because of the absence of a clearance signal was a proximate cause.

On issues in relation to the defendants' cross-complaint for contribution by Walker, the jury found that he was

negligent as to keeping a proper lookout, and as to the control and management of his car, and that his negligence in each of those respects was a cause of the accident. Upon those findings the court concluded that there existed on the part of Walker liability in common with the liability of the defendants for such damages as Walker's guests, Iselin and Bashaw, were entitled to recover, and that therefore Walker was liable for contribution to the defendants.

As we recently said in *Standard Accident Ins. Co. v. Runquist*, 209 Wis. 97, 102, 244 N. W. 757:

"It is clearly established in Wisconsin that in order for one joint tortfeasor to have contribution against another, it must be established that they have been subjected to a common liability and that the one seeking contribution has paid more than his equitable share of the common obligation."

Among the cases cited in support of that statement was *Zutter v. O'Connell*, 200 Wis. 601, 229 N. W. 74. In that case injury to the plaintiff was caused by negligence of the defendant O'Connell, whose automobile collided with an automobile in which plaintiff was riding, and which was being negligently operated by his father. The latter's negligence was also a cause of plaintiff's injury, and therefore O'Connell sought contribution from plaintiff's father. But as there could not, as a matter of law, be any recovery by the son from his father, even though the latter's negligence was a cause of the son's injury, we held that there existed no such common liability as was the first essential for contribution. Thus, we then said:

"Although the verdict established the fact that the accident was the result of the concurring negligence of both Thomas O'Connell and Phillip Zutter, the right of contribution does not spring from concurring negligence. A common liability is the first essential for contribution. . . . In the absence of a common liability there can be no con-

tribution. Although the negligence of Phillip Zutter concurred to produce the injuries suffered by Donald Zutter, his son, it gave rise to no liability on the part of Phillip Zutter. Thomas O'Connell, therefore, if and when he paid the judgment, discharged no part of Phillip Zutter's liability, which must be the basis of a right to contribution from Phillip Zutter. His cross-complaint was properly dismissed."

So, in the case at bar, even if negligence on the part of Walker concurred with the negligence of the defendants in causing injury to his guests, Iselin and Bashaw, if the latter were not entitled, as a matter of law, to recover from Walker, as their host, for such negligence on his part, then there exists on his part no common liability because of which the defendants are entitled to contribution from Walker. Consequently, in the final analysis, the defendants' right to contribution from Walker depends upon whether his concurring negligence, even though it was a cause of injury to Iselin and Bashaw, entitled them to recover from him, if they had sought to do so. In considering whether Iselin and Bashaw were entitled to recover from Walker, it must be noted that Walker's lookout, which enabled him to see only forty to fifty feet ahead, when he knew that he could not stop within that distance, while going at the rate of thirty-five to forty miles per hour, at which he had traveled ever since leaving Madison, could well be regarded by the jury as not a proper lookout, and that under the existing circumstances the jury was well warranted in finding that Walker was negligent as to lookout and also as to the control and management, and that his negligence in each of those respects was a cause of the collision. However, both Iselin and Bashaw had assumed the risk because of such negligence. Both knew that Walker had been maintaining that speed of thirty-five to forty miles per hour ever since they left Madison; they were satisfied with Walker's

driving, although Bashaw knew that it was so foggy that he could not see any light out in front of their automobile and did not know how far their lights illuminated the highway; and Iselin knew that, with the aid of their lights, they could see but fifty feet, that it was dangerous to drive, and that Walker required sixty feet within which to stop. Bashaw testified that he made no effort to keep a lookout but relied upon Walker and Iselin, and was satisfied to leave that matter to them. Iselin testified that he was helping Walker in keeping a lookout, but did not see the truck or its tail light until within fifty feet of them, and Walker testified that when he saw them he applied his brakes to stop and slowed down from thirty-five to forty miles per hour to five to ten miles per hour, and that he could have stopped in fifty to seventy-five feet, but could not stop within the distance that his lights enabled him to see the truck ahead of him. Manifestly, the speed at which and the manner in which Walker was driving as he approached the place of collision, and his inability to see ahead such distance as was required to enable him to stop in time to avoid a collision while driving in that manner, were hazards inconsistent with the safety of his guests. They knew of and appreciated the danger because of those hazards, and there existed acquiescence and willingness on their part to proceed in that manner in the face of that danger. Consequently, in view of the concurrent existence of those three elements, there is no liability on the part of Walker for injuries to his guests as the result of his negligence in respect to those assumed dangers. *Knipfer v. Shaw,* 210 Wis. 617, 246 N. W. 328, 330, 247 N. W. 320. Such liability on Walker's part would only have resulted if there had been an actionable increase in the risk of injury from Walker's negligence, beyond the risk which his guests had assumed, because of his failing to stop or to avoid the collision when he was suddenly con-

fronted with the truck. However, he was then too close to be able to stop, and that emergency arose because of his preceding negligence as to speed and insufficient lookout, in which Iselin and Bashaw had acquiesced, and as to which they had therefore assumed the risk of injury. Under those circumstances,—as was held in *Young v. Nunn, Bush & Weldon Shoe Co.* 212 Wis. 403, 249 N. W. 278, 281,— Walker's negligence cannot be separated from his prior conduct which brought on that emergency, and Iselin and Bashaw are deemed, in law, to have assumed the risk involved in that emergency, as well as the risk by reason of the negligence which preceded and brought it on. It follows that under the evidence there is no liability whatever on the part of Walker to Iselin and Bashaw and that, consequently, there is no such common liability as is essential to render him liable for contribution to the defendants herein. As under the evidence now under review, Walker would be entitled to a dismissal of the cross-complaint upon the merits, another question raised by counsel as to the extent to which he should be required to contribute, need not be considered at this time.

As the accident occurred after the enactment of sec. 331.045, Stats., relating to comparative negligence, the jury's findings that the negligence of the plaintiffs, Walker, Iselin, and Bashaw, was a cause of their injury, did not bar a recovery on the part of any plaintiff, unless such negligence on his part was greater than that of the defendants. The jury did not so find. Instead, the jury found that, as between Walker and the defendants, the causal negligence on his part was twenty-five per cent. as compared to seventy-five per cent. of causal negligence on the part of the defendants; that, as between Iselin and the defendants, the causal negligence on Iselin's part was fifteen per cent. as compared to eighty-five per cent. of causal negligence on the part of the defendants *and also Walker;* and that, as

between Bashaw and the defendants, the causal negligence on Bashaw's part was ten per cent. as compared to ninety per cent. of causal negligence on the part of the defendants *and also Walker*. Those findings cannot stand because, as the jury was erroneously permitted to consider the defendants' negligent failure to have a clearance signal a proximate cause of plaintiffs' injuries, the jury undoubtedly also erroneously included that failure as a part of the entire causal negligence that was attributable to the defendants. Obviously, if the negligence as to the clearance signal was erroneously included by the jury as an element of the defendants' causal negligence, the entire comparison and the computation to determine the proportion are also erroneous, and that error cannot now be corrected by the court without invading the province of the jury. It follows that because of that error a new trial is necessary in order to have a jury pass upon those issues under proper instructions.

It is contended on behalf of the defendants that errors occurred in the jury's findings as to the proportion of the causal negligence of Iselin and Bashaw, respectively, because the jury was required, by reason of the form of the questions of the verdict as to each of those plaintiffs, to find the proportion or percentage of the causal negligence of each of them, on the one hand, and "of the defendants and also of Walker," on the other hand. Thus, for instance, the jury in making its finding that there was fifteen per cent. of causal negligence on the part of Iselin, as compared to eighty-five per cent. of causal negligence of the defendants and Walker combined, was not required to find, but was in fact prevented from finding, the proportion of the negligence of Iselin to that of the only parties (i. e. the defendants) against whom recovery was sought by Iselin. Defendants contend that the jury, instead of being required to compare Iselin's negligence with the combined negligence of the defendants and Walker, and to combine Walker's

negligence with that of the defendants, in finding the proportion or percentage of Iselin's negligence, and also of Bashaw's negligence, should have included the negligence of Walker as part of the negligence of Iselin, and also of Bashaw, because Walker's negligence should be imputed to his passengers, Iselin and Bashaw, as a matter of law, under the decision in *Knipfer v. Shaw, supra.* In that case, in view of the peculiar facts that the driver and the occupant had arranged between them as to the manner in which each was to watch certain features along the highway that would indicate the position of the automobile thereon, and that the occupant had expressly delegated to the driver the duty of watching the black center line and looking ahead, it was held that there was established such a relationship between them as rendered inapplicable the rule applied in *Reiter v. Grober,* 173 Wis. 493, 181 N. W. 739, 741, 18 A. L. R. 362; *Brubaker v. Iowa County,* 174 Wis. 574, 183 N. W. 690, 18 A. L. R. 303; and *Calumet Auto Co. v. Diny,* 190 Wis. 84, 208 N. W. 927, that the negligence of the driver is not imputed to the occupant of a private conveyance who has no control over the driver, is not engaged in a joint undertaking with him, and does not stand in any other relation to him which requires his negligence to be imputed to the occupant. However, as in the case at bar there were no such peculiar facts to establish any relationship other than the ordinary and usual relationship of host and guest, the rule applied in the cases last cited is applicable here.

Sec. 331.045, Stats., in connection with providing that contributory negligence shall not bar a recovery in an action by any person for negligence "if such negligence was not as great as the negligence of the person against whom recovery is sought, . . ." provides that "any damages allowed shall be diminished by the jury in the proportion to the amount of negligence attributable to the person re-

covering." That clause as quoted is, in a measure, incomplete in that, while it specifically mentions "the amount of negligence attributable to the person recovering," as one of the terms of the proportion, it does not state what constitutes the other term of the proportion. However, inasmuch as that provision does clearly limit the one term of the proportion to "the negligence attributable to the person recovering," the language of the statute does not admit of including in that term of the proportion causal negligence which is attributable solely to some other participant, and not to the person recovering. As a result, the causal negligence of all of the other participants in the transaction must be deemed to constitute the other term of the proportion. Although it is true that that result does not admit of the diminution of damages in so far as they may also have been caused in part by the negligence of others than the person from whom recovery is sought, that consequence, in so far as that person is concerned, is, in respect to the amount of his liability, no different than the settled rule at common law that "any one of two or more joint tortfeasors, or one of two or more wrongdoers whose concurring acts of negligence result in injury, are each individually responsible for the entire damage resulting from their joint or concurrent acts of negligence." *Kingston v. Chicago & N. W. R. Co.* 191 Wis. 610, 613, 211 N. W. 913. Sec. 331.045, Stats., does not change the common-law rule as to the extent to which every joint tortfeasor, who is liable at all, is liable for such damage as the injured person is now entitled to recover. At common law the injured person could not recover at all, if there was some negligence on his part which contributed to his injury. But, if he was entirely free from negligence, every one of several tortfeasors, whose negligence was a cause of the injury, was liable for all of the resulting damage even though the negligence attributable to one of them may have been insignificant in

proportion to the negligence of the others. Now, by virtue of sec. 331.045, Stats., the instances in which there is a right to recover have been increased in that, even though there was contributory negligence, recovery is not barred if such negligence was not as great as the negligence of the person against whom recovery is sought. If such contributory negligence was as great as the negligence of one of the tortfeasors against whom recovery is sought, then as to that particular tortfeasor there still is no right to recover. That tortfeasor is out of the picture as far as liability on his part to the party whose negligence was as great as his is concerned. On the other hand, from every remaining tortfeasor, whose negligence was greater than that of the person seeking to recover, there exists now, by virtue of the statute, a right to recover, subject, however, to the limitation prescribed by the statute, that the damages allowed shall be diminished in proportion to the negligence attributable to the person recovering. That is the only limitation prescribed in respect to the amount recoverable. Otherwise, there is no provision which effects any change in the common-law rule that all tortfeasors who are liable at all, are liable to the injured person for the entire amount now recoverable by him.

In connection with remanding the cause for a retrial, it is proper to also note the defendants' contention as to the inadequacy of the only instruction given to the jury in relation to the word "cause," as used in some of the questions which were submitted for the verdict, to wit:

"This presents the simple question whether the relation of cause and effect exists between negligence on the part of defendants and the damages which the plaintiff sustained."

That instruction was insufficient, and is subject to the criticism that "The court made no attempt to impress upon

the jury that the cause must be the efficient cause, nor is there any limitation as to however remote it might be." *E. L. Chester Co. v. Wisconsin Power & Light Co.* 211 Wis. 158, 172, 247 N. W. 861, 866.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.

A motion for a rehearing was denied, with $25 costs, on April 3, 1934.