Kimball, Appellant, vs. Mathey and another, Respondents.

*January 16—February 17, 1948.*

For the appellant there was a brief by *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner,* all of Oconto Falls, and oral argument by *Philip Lehner* and *Howard N. Lehner.*

*Emmet McCarthy* of Marinette, for the respondents.

BARLOW, J.  The question on appeal is whether the plaintiff, Bruce Kimball, as a matter of law, assumed the risk of being injured in the manner that he was injured.  This requires an examination of the facts.

During the afternoon of June 23, 1946, Bruce Kimball, plaintiff and appellant, and three friends, all residents of Lena, Wisconsin, started for Lake Superior on a fishing trip.  They were driving a Ford coach, and stopped for the night at overnight cabins along United States Highway 2, about a mile west of Ashland.  It rained intermittently during the afternoon and evening.  The plaintiff, Bruce Kimball, awakened at 3:30 in the morning of June 24th and observed nothing unusual.  There was no water in sight.  The cabins were in an area at a height that would normally be high and dry.  About four o'clock in the morning they were awakened by a washing noise on the cabin walls and found the cabin floors covered with eighteen inches of water.  In that short period of time the water rose several feet.  The whole surrounding area was flooded.  They carried their clothing to the car and pushed the car onto the highway and then decided to proceed west on Highway 2 with defendant John Mathey driving the automobile, which was owned by George Steffen, another member of the party.  Plaintiff occupied the right rear seat.  Highway 2 runs in an easterly and westerly direction.  They drove along Highway 2 about a mile to a long bridge, crossed it and continued to a "Y" in the road where Highway 2 continues west and Highway 13 turns north and follows the contour of Lake Superior, which highway would take them to Bayfield.  They then traveled north on Highway 13 for a dis-

tance of between a quarter of a mile and a mile and a quarter. The portion of Highway 13 over which they traveled was covered with four to eighteen inches of water. They stopped and discussed the advisability of turning back, as they could feel the pressure of the water on the car as they drove along and could feel the car shake and vibrate. All along the route of travel they had observed trees, stumps, pilings, logs, uprooted trees, machinery, dead livestock, and debris of all kinds in the rushing water. They then decided to return over the same highway to the "Y" because of the danger of the water. At one time the motor stopped because of the water. The surfaced portion of the highway between the "Y" and the long bridge on Highway 2 was not covered with water. The distance between the "Y" and the long bridge, according to a plat introduced in evidence, was five hundred feet. The motor stalled again between the "Y" and the long bridge. Another car came along from the east, which they stopped and told the driver to turn back, which he did. They then started the motor and followed the car which had turned back. As they were driving along it was raining. They were between one hundred and two hundred feet back of the car they were following. The leading car crossed the bridge but as the car in which plaintiff was riding approached the bridge, which was one hundred twenty-five feet in length with a thirty-foot driveway, the concrete slab of the highway abutting the bridge was undermined by the water and dropped into the water against the abutment of the bridge, the preceding car having just crossed it. All of the passengers succeeded in getting out of the car by breaking the windows. The occupants of the car testified they were observing the water and debris in the water all along the route of travel, and at one point stopped the car to see it. The driver did not see the roadway had washed out until he was right on it; the passenger in the front seat to the right of the driver testified he saw it when they were about

twenty feet from it; another passenger testified the concrete slab washed out just as the car came upon it. The entire bridge washed out within seven minutes after the car entered the water. No part of the bridge or the automobile was found after the flood.

The question submitted to the jury was, Did he (plaintiff) assume the risk of being injured in the manner that he was injured? The jury's answer was "No" and the court changed it to "Yes." Thus we reach the question of the hazard or danger inconsistent with the safety of the plaintiff which he assumed. It was for this reason the court submitted the question in the form it was submitted.

In *Knipfer v. Shaw* (1933), 210 Wis. 617, 246 N. W. 328, 247 N. W. 320, and cases there cited, it was held that three elements enter into the consideration of assumption of risk which will prevent recovery by a guest: (1) A hazard or danger inconsistent with the safety of the guest; (2) knowledge and appreciation of the hazard by the guest; and (3) acquiescence or a willingness to proceed in the face of danger. The evidence clearly shows this was the most serious flood in that section of Wisconsin in many years. Certainly these conditions were a hazard or danger to anyone traveling on the highway, and this was known to this plaintiff and he acquiesced in it when he continued on the journey in the face of all the known facts and then joined with all the passengers to turn back after they had traveled for some distance. But appellant argues this is not sufficient for the reason that plaintiff was injured because of the negligent lookout of the defendant driver, which negligence plaintiff did not assume. In *Brockhaus v. Neuman* (1930), 201 Wis. 57, 228 N. W. 477, where four persons had attended a football game and on the return trip the driver failed to make a curve in the road, causing the car to overturn, injuring the plaintiff, and the jury found the plaintiff did not assume the risk of the manner in which the car was be-

ing operated, this court held the plaintiff did assume the risk as a matter of law, citing *Olson v. Hermansen* (1928), 196 Wis. 614, 220 N. W. 203, and cases there cited.

The facts here show the conditions were unusual and abnormal. They were such as to attract the attention of all the passengers, including the driver. The plaintiff knew the driver was observing these conditions as they drove over two or three miles of highway prior to the accident. He knew this because all of them, including the driver, discussed the conditions, including the danger of proceeding at the time they decided to turn back. To say that plaintiff did not know and assume the negligent lookout of the driver under all the existing conditions would require us to ignore all the traits of normal persons. The driver here did exactly what every driver would have done under the circumstances, which was to observe the floodwaters at all times, and plaintiff knew it and acquiesced in it. It is considered the trial court was correct in its conclusion.

*By the Court.*—Judgment affirmed.

WICKHEM and HUGHES, JJ., concur.