JOHNSEN, (Tressie), Plaintiff and Appellant, vs. PIERCE
and another, Defendants and Respondents: JOHNSEN
(Robert L.) and another, Interpleaded Defendants and
Respondents.

*October 7—November 5, 1952.*

For the appellant there was a brief by *Crawford, Crawford & Cirilli* of Superior, and *Darrell MacIntyre* of Madison, and oral argument by *Arthur Cirilli*.

For the respondents there was a brief by *Langer & Cross* of Baraboo, and oral argument by *Clyde C. Cross*.

For the interpleaded respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur Wickham* and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Mr. Wickham*.

BROWN, J.   At the time of the collision plaintiff and her son, Robert, were making a journey from their home at Superior, Wisconsin, to Biloxi, Mississippi, to bring home another of plaintiff's sons who was stationed there in the army. Their car was a Buick convertible. Mrs. Johnsen

testified that she and Robert owned the automobile jointly and that it was bought with the proceeds of two automobiles which she and Robert had owned separately, plus a cash payment to which they each contributed. Robert also testified that the automobile was owned by him and his mother. None of the testimony was disputed and we think it is uncontroverted and uncontrovertible that there was joint ownership.

It is submitted that the title to the automobile was in Mrs. Johnsen's name and her counsel infer that in some way this destroys the joint ownership. The common purchase by use of the parties' separate resources and their testimony that they owned the automobile together, none of which was disputed by anyone, in our view makes the manner in which they registered ownership quite irrelevant to the issues of this action. We regard the joint ownership to be established as a matter of law.

The purpose of the journey was to fetch Bernard Johnsen, son of the plaintiff and brother of defendant Robert Johnsen, from his army post, Biloxi, to his home, Superior. It was mutually agreed upon by the plaintiff and Robert and carried out together. There was no dispute concerning any of these facts and the learned trial court was clearly correct in determining that no jury question was presented and in finding as a matter of law that the mother and son were engaged in a joint venture at the time of the accident. *Archer v. Chicago, M., St. P. & P. R. Co.* (1934), 215 Wis. 509, 255 N. W. 67; *Paine v. Chicago & N. W. R. Co.* (1935), 217 Wis. 601, 258 N. W. 846; and *Emerich v. Bigsby* (1939), 231 Wis. 473, 286 N. W. 51, are all actions in which the plaintiff and the driver were joint owners of the auto in which they rode and the purpose of the trip was a social one in which they were jointly interested. In each case we held that the two owners were engaged in a joint adventure and that a mutual agency existed between them whereby the negligence of the driver was imputed to the

passenger. We consider that these cases, so similar to the instant one on this proposition, are controlling.

Concerning the details of the accident it is necessary to say that when Mrs. Johnsen and her son left Superior the highway was very icy and slippery and continued so all the way to Eau Claire where they spent the night. On the second day the road near Eau Claire improved somewhat but became bad again and stretches of ice were encountered. The collisions occurred while the Johnsens were descending a hill near Baraboo. The road had been icy for about a mile and the entire hill was icy. Robert estimated his speed down the hill at approximately fifteen to twenty miles per hour. The jury found he was not negligent in this respect. As the Johnsens went down the hill a truck driven by one Garrity was coming up. Robert saw the truck skid over into his own traffic lane when it was one hundred to one hundred fifty feet away and then return to its proper position. When the truck was about twenty-five feet in front of the Johnsen car it skidded again and its rear end swung across Johnsen's path. Robert was not certain whether he applied his brakes; if he did they were useless. In the last twenty-five feet he attempted to turn off on the right shoulder of the highway but his car did not respond and he hit the truck head on and both cars stopped instantly. The jury found that Robert was guilty of negligence in the management and control of his automobile just prior to this collision and that such negligence was forty-five per cent of the cause of plaintiff's injuries.

Pierce had been following the Johnsen automobile for two and one-half miles at a speed of twenty-five or thirty miles per hour, and was from one hundred fifty to two hundred feet behind it as they went down the hill. He saw the collision ahead of him and applied his brakes lightly. The road was slippery and the brakes had no appreciable effect. When Pierce was about seventy-five feet away from

the Johnsen car he tried his brakes again without noticeable result. He then collided with the Johnsen car and drove it again into the Garrity truck. The jury found Pierce not negligent in respect to speed but negligent in respect to management and control and assessed this negligence at forty-five per cent of the cause of plaintiff's injuries. The remaining ten per cent of causal negligence was placed by the jury upon Mrs. Johnsen, herself, just prior to the first collision for failing to protest to Robert Johnsen concerning the manner in which he drove and for failure to warn him of impending danger. Garrity was killed in the accident and no one representing him was a party to this lawsuit; plaintiff did not contend that Garrity was negligent and no questions concerning causal negligence on his part were submitted to the jury.

The evidence on the management and control of the Johnsen and Pierce automobiles is such that it raises jury questions and the findings that each driver was causally negligent has support in the evidence and we cannot disturb it. The comparison of negligence is ordinarily a jury matter. *Bailey v. Bach* (1950), 257 Wis. 604, 609, 44 N. W. (2d) 631; *Cameron v. Union Automobile Ins. Co.* (1933), 210 Wis. 659, 664, 246 N. W. 420, 247 N. W. 453. We find nothing in the evidence to justify interference with the jury's apportionment, which determines that Robert Johnsen's negligence as a cause of plaintiff's injuries was as great as the causal negligence of Pierce. Because of the existence of the joint venture already discussed, Robert's negligence contributing to the accident is imputed to the plaintiff and becomes her own when she complains or defends in an action against a third party. *Archer v. Chicago, M., St. P. & P. R. Co., supra.*

Sec. 331.045, Stats., declares:

*"Comparative negligence; when bars recovery.* Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for

negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

Robert's negligence was as great as that of Pierce and by virtue of this statute Robert could not have recovered damages from Pierce. In the action against Pierce Mrs. Johnsen has acquired by imputation all the causal negligence of Robert and just as he could not recover from Pierce so she cannot, even without counting the ten per cent causal contributory negligence that was all her own. The learned trial court properly dismissed Mrs. Johnsen's complaint against Pierce.

We pass now to Mrs. Johnsen's action against her son. Though Mrs. Johnsen and Robert were engaged in a joint venture, in an action between them the negligence of one adventurer is not imputed to the other. Between such parties their liability to each other is the same as though the driver were the host and the plaintiff the guest, and the driver owes to the other the care required of a gratuitous agent. *Archer v. Chicago, M., St. P. & P. R. Co., supra.*

As between joint adventurers the doctrine of assumption of risk applies upon about the same basis that it does in the host-guest cases. *Krueger v. Shufeldt* (1948), 253 Wis. 192, 196, 33 N. W. (2d) 227. The elements of assumption of risk by a guest are well established. They are: (1) A hazard or danger inconsistent with the safety of the guest; (2) knowledge and appreciation of the hazard by the guest; (3) acquiescence or a willingness to proceed in the face of danger. *Knipfer v. Shaw* (1933), 210 Wis. 617, 246 N. W. 328, 247 N. W. 320; *Kimball v. Mathey* (1948), 252 Wis. 194, 31 N. W. (2d) 184. Such hazards, known, understood, and accepted, are assumed by the guest as a matter of law.

The guest takes the driver as she finds him, with such skill and judgment as he possesses; but the host-driver owes

to his guest the duty not to increase that danger which the guest assumes as a matter of law when she enters the car and not to create a new danger. *Pierner v. Mann* (1946), 249 Wis. 469, 25 N. W. (2d) 83. The risks which the guest assumes as a matter of law do not include such increased or newly created dangers. Applying these principles to the case at bar, the trial court submitted questions concerning the duty of Robert to his mother and the assumption of risk by her which, with their answers, are as follows:

"Question 5: Was the defendant Robert Johnsen negligent so as to increase the danger which the plaintiff Tressie Johnsen assumed when she entered the car, or so as to create a new danger, as to: . . .
"(b) With respect to Robert Johnsen's management and control of his car just prior to the first collision?
"Answer: Yes.
"Question 6: If you answer any of the subdivisions of Question 5 'Yes,' then answer the corresponding subdivision of this question: Did defendant Robert Johnsen fail to exercise the skill and judgment he possessed just prior to the first collision? . . .
"(b) With respect to the management and control of his car?
"Answer: Yes."

By its answer to Question 8 the jury found such negligences were causal. Question 9 dealt with 5 (a) and 6 (a) concerning speed, not material here. Then the verdict asked:

"Question 10: If you answer Questions 5 (b) and 6 (b) and 8 'Yes,' then answer this question: Did plaintiff Tressie Johnsen assume the risk of this negligence by defendant Robert Johnsen?
"Answer: Yes."

On motion of defendant Robert Johnsen after verdict the court changed the answers to questions 5 (b), 6 (b), and 8 from "Yes" to "No." Plaintiff protests, but we consider such changes were required by the evidence.

In answering earlier questions the jury had determined that the only causal negligence on Robert's part was in his management and control of the automobile. We find no evidence that just prior to the collision he increased an existing danger whose risk had already been assumed by the plaintiff, or that he created a new one. When the Garrity truck invaded his traffic lane, theoretically Robert should have stopped or turned out upon the shoulder, but the uncontroverted testimony was that a firm application of brakes when the road is slippery will throw an automobile out of control. The alternative of light, intermittent braking was actually tried by Pierce and found to be ineffective. Obviously, Robert's failure to put on his brakes when his car and the truck were so close together did not create or increase danger. He did attempt to turn out,—his mother saw him cramp the wheels,—but the ice kept the car from responding. It is not contended that he could or should have tried anything else in the time immediately prior to the collision and in our opinion the learned trial court correctly changed the verdict in respect both to his exercise of skill and judgment and his increasing or creating danger. But even if both the trial court and we should be mistaken and the answers to 5 (b) and 6 (b) ought to have remained unchanged, in answering Question 10 the jury found that the risks of increased or newly created danger and failure by the driver to exercise his best skill and judgment, which the guest did not assume as a matter of law, were in this instance as a matter of fact assumed by Mrs. Johnsen.

This case essentially is much like *Knipfer v. Shaw, supra; Kimball v. Mathey, supra;* and *Shrofe v. Rural Mut. Casualty Ins. Co.* (1950), 258 Wis. 128, 45 N. W. (2d) 76, where weather and road conditions prevented the driver from maintaining normal lookout, effective for a timely discovery of obstructions. Here, weather conditions prevented the normal exercise of management and control. A guest who voluntar-

ily proceeds under hazardous conditions hopes, of course, that no accident will result but if the hope proves vain and an accident attributable to the conditions occurs the guest may not shift her loss to the shoulders of her host who in his attempt to control and manage the automobile was himself controlled and thwarted by the conditions of which the guest was aware and which, with their inherent risks, she accepted.

"May it be said, with reason and common sense, that a person may ride in a car for many miles under such conditions without fully assuming the risk of injury incident to such a trip? We think not." *Knipfer v. Shaw, supra* (p. 620).

Plaintiff also submits that she is entitled to a new trial because the verdict was the result of prejudice and is contrary to the evidence and to law. A careful study of the record convinces us that it is not subject to such defects. The judgment upon it should be affirmed.

The insurer of the defendant Robert Johnsen raised questions concerning coverage which become immaterial when it is determined that there is no liability to the plaintiff on the part of the insured.

*By the Court.*—Judgment affirmed.