HANSEN, Respondent, vs. BIRON and another, Appellants.

*April 7—May 10, 1932.*

*Mark Catlin* of Appleton, for the appellants.

For the respondent there was a brief by *Bradford & Bradford,* and oral argument by *A. S. Bradford* and *Gordon E. Derber,* all of Appleton.

FAIRCHILD, J. A brief reference to the evidence in the case will serve to show that the direct facts in issue are established by undisputed evidence and that such facts are decisive of the cause.

The traveled portion of the highway covered by concrete is sixteen feet wide, the center of which is marked with a black line. The respondent was driving a car which was about fifteen feet long over all. As respondent neared the place where he intended to cross over the lane for the east-bound travel, he looked west and saw the east-bound car coming some five hundred feet distant. The road was clear up to where this car was. He testified:

"While I was driving west and when I got up to where I thought about I wanted to turn, there were two driveways there, and I drove up to the second driveway to turn in, and

I looked down the road and saw a car coming, and I had no reason to believe that I didn't have ample time to drive in, which I did. I turned in, and when I got just with my front wheels off the concrete this man came up the hill like a shot out of a cannon and struck me."

He testified there was a slight depression east of the place of collision, also a slight depression to the west.

"*Q.* So that in driving from east to west when you were in the depression on the east side you can't see cars coming on the other side, can you? *A.* Not if you are in the lowest part of it, no sir. *Q.* In other words, the depression isn't so long that you would only be a little time in it? *A.* I wouldn't be able to see." "I drove up to the driveway and when I got there I turned in. I got to the top there and I looked down the road to see if I had plenty of time, to see if the road was clear, and then I turned in—and then I turned in and I saw this man coming. *Q.* And did you shift your gears when you started to go across the road? *A.* No. *Q.* Did you stop and look to see whether or not you could clear this man? *A.* No. *Q.* You knew he was coming? *A.* Yes, sir. *Q.* And you didn't stop to see whether or not you could clear him? *A.* No, why should I? *Q.* So that when you started to make the turn, do you know how far away he was from you? *A.* I knew where he was when I drove up here at this point here (referring to an exhibit). I could see him coming; then I went on a ways and made my turn into the driveway here, and he was coming on at such a rate of speed I could not get in there before he struck me."

There is other testimony in which phrases occur that may be construed as shading, to some extent, the meaning which stands out in the testimony just referred to; but they do not militate against the apparent fact that plaintiff failed to give timely warning of his intention to turn so as to enable defendant Biron to change his speed and course. The evidence is also wholly to the effect that respondent did not wait, before attempting to cross over the left side of his highway, until an opportunity was present so that, in the exercise of

ordinary care, he could cross without creating a dangerous condition. *Lardeau v. Johnson,* 203 Wis. 509, 234 N. W. 710. The circumstances here are not such as to make the right to calculate a jury question determinative on the point of negligence as it was in *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823; *Dahinden v. Milwaukee E. R. & L. Co.* 169 Wis. 1, 171 N. W. 669; *Janz v. Rounds,* 188 Wis. 612, 206 N. W. 833. In those cases the invading driver was so situated that his presence would be to the oncoming driver some suggestion of his purpose to cross; under the circumstances in those cases and the law applicable thereto, he had a standard speed limit to aid him in forming his judgment as to whether he had sufficient time to pass the opposing line of travel without collision. In this case the only one who knew the respondent's intention to invade appellant's side of the highway was respondent himself. He did not know the rate of speed at which appellant was traveling. He knew appellant might lawfully be traveling at a high rate of speed, but he did nothing to protect himself and others against the danger that was apparent to him and was to be created by his invasion of the other lane of travel. The thirty-mile limit was not in force here as it was in *Janz v. Rounds, supra.* The evidence shows appellant Biron was proceeding lawfully, and but for the respondent's sudden placing of his car in the path no collision would have occurred. It shows that appellants' car was traveling at forty or forty-five miles an hour and that respondent's was moving at a rate of from twelve to fifteen miles an hour. The size of respondent's car was such that it would cover a considerable portion of the traveled part of the highway at the time of making the turn. A mathematical calculation based on miles per hour at which the two cars were traveling demonstrates that at the time of turning by respondent the cars were so close together that the act of the respondent

made the accident inevitable. The immediateness of the crash following the change of his course by respondent shows the proximity of the appellants' car to have been such that respondent either did not maintain a proper lookout or that he proceeded recklessly. He afforded appellant Biron no reasonable opportunity to avoid a collision.

The conclusion follows that had the respondent complied with the duty which rested on him of using ordinary care to select an "opportunity sufficiently clear so that in the exercise of ordinary care he could cross without creating a condition dangerous to others as well as to himself likely to result in injury," the collision would not have occurred. *Lardeau v. Johnson, supra.*

There is no evidence of negligence on appellants' part, hence they were entitled to their motions to change the answers to questions in the special verdict and to judgment on the counterclaims.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint and enter judgment upon the counterclaims in favor of defendants.