TRASTEK, by Guardian, and another, Appellants, vs. DAHLEM and another, imp., Respondents.

*September 13—October 8, 1935.*

250

For the appellants there was a brief by *Hougen & Brady,* attorneys, and *Norman E. Risjord* of counsel, all of Manitowoc, and oral argument by *Mr. C. E. Brady* and *Mr. Risjord.*

For the respondents there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Oscar T. Toebaas.*

FAIRCHILD, J.  The evidence amply sustains the finding of the jury that Dahlem was not guilty of negligence in the

management of his car at the time Weyland overtook him on the highway. Judgment in Dahlem's favor dismissing the complaint against him ought to follow such finding, unless it must be said that the finding of the jury that Dahlem turned to the left just before the Weyland car skidded and tipped over dominates, and therefore nullifies the finding with reference to negligence. Appellant insists that the "left turn" of the automobile described in question No. 10 was actionable negligence; that it controls the legal effect of the broader findings as made by answers to questions Nos. 11 and 12; and that therefore the finding that he did use ordinary care is necessarily contrary to the evidence and necessarily wrong. The three questions involved are as follows:

"Question No. 10: Did the defendant Dahlem at or just before the accident turn his car to the left?

"Answer: Yes."

"Question No. 11: If you answer question No. 10 'yes' then answer this question: Was the car of defendant Dahlem in the south traffic lane or was it in the traffic lane which was immediately to the right of and next to the center of the highway when he turned to his left at or just before the accident?

"Answer: Next to the center of the highway."

"Question No. 12: If you answer question No. 10 'yes' then answer this question: Did the defendant Dahlem fail to use ordinary care in turning his car to the left as found by your answer to question No. 11?

"Answer: No."

To comply with the statutes applicable to this situation, the operator of a vehicle upon a highway should not deviate from the traffic lane in which he is operating without first ascertaining that he can do so with safety, and without injury to cars which may be following him. Sec. 85.16 (2), Stats. He is also required, if intending to turn to the left into a private way, to make such turn from the traffic lane immediately to the right of and next to the center of the highway. Sec. 85.17 (2), Stats.

Sec. 85.16 (4), Stats., provides that the operator of a vehicle about to be overtaken and passed by another vehicle approaching from the rear shall give way to the right, if practical, in favor of the overtaking vehicle. Dahlem having, in accordance with the law, taken a proper position from which to turn into a private driveway, could continue in that position, and his refusal to give way to his right, upon the approach of a car from the rear, would be notice of his intention to make such turn. He cannot be held guilty of violating sec. 85.16 (4), Stats., when he clearly was complying with the requirements of sec. 85.17 (2), and where he obeyed sec. 85.16 (2).

Dahlem had a right to be on the highway. He could lawfully move from the outside lane into the inside lane upon ascertaining that such movement could be made with safety to other vehicles moving in the rear. The testimony relates that he moved from one traffic lane to another at a time when it was safe and proper for him to do so. He conformed to the requirements of sec. 85.16 (2), Stats. He was also justified in attempting, in the exercise of ordinary care, to move across the highway into his own driveway. Sec. 85.17 (2), Stats. There is testimony supporting the claim of care and caution on his part. He had moved into the inner traffic lane some three hundred feet from the place of the accident. He was seeking an opportunity to turn into his own driveway, but he did not move out of the inner traffic lane to his left, because the lights of an on-coming car rather suddenly attracted his attention, suggesting the possibility of an attempted passing. He did not give way to the right, because he was in the position he should be in to proceed into his driveway when the highway to the left of him was clear enough to afford him an opportunity to do so. The whole north half of the highway was available to appellant's driver. Dahlem had lowered his speed. His car was equipped with rear signal lights, which were operating. The state of the

evidence and the ultimate facts as found by the jury furnish sufficient grounds to sustain the conclusion that no violation of the law of the road on the part of Dahlem occurred.

From the questions and answers it appears that the jury found that Dahlem, while driving in the traffic lane immediately south of and next to the center of the highway, and in the exercise of ordinary care, did turn his car to the left just before the accident. The trial court was of the opinion that these findings compelled judgment dismissing the complaint against the respondents, and that order was made.

The assignment of errors is based upon a claim that the findings of the jury do not lead to the conclusion that Dahlem was free from actionable negligence, because, by the answer to question No. 10, it was found that he did turn to the left; that causation and anticipation were present; and that question No. 12 ought not to have been submitted. The contention is based in turn upon the proposition that but two explanations of the accident existed; one, that "Dahlem turned his car to the left and into the lane in which Weyland's car was traveling just as it was about to pass the Dahlem car, and that had Weyland continued in his course after Dahlem's turn, he would have run into the middle left side of Dahlem's car." The other explanation or theory was that "defendant Dahlem and his wife testified that he did not turn at all."

Inconsistency in the answers to the questions of the special verdict does not necessarily exist. The jury did not find Dahlem guilty of turning out of his traffic lane, but they did find that such turn as he made was in the exercise of ordinary care. The meaning appellant ascribes to the finding under question No. 10 is not warranted by the words used in the question or answer. The effect of the jury's answers to the quoted questions is that Dahlem did not turn his car directly across the path of Weyland's car. The jury were asked about a left turn. Dahlem had emphatically denied that he had turned across the path of the Weyland car, and in-

sisted that, from the time he determined that the Weyland car was coming too fast for him to turn, he kept the car wholly in his traffic lane. The other witness who was in the car with him testified:

"When Mr. Dahlem slowed up I sensed something was wrong. I looked through the rear window of the Essex and saw the lights giving a swerve.

"I estimated the lights of the Weyland car were then two or three car lengths back of our car. After that I observed the car skidding past us. My husband was then driving in the second lane from the south.

"From that point on and eastward, had your husband turned the car into the third lane?

"No, sir.

"Did your husband at any time before this accident turn this Essex car directly across the path of the approaching Weyland car?

"No, sir, he did not."

The traffic officer, who arrived shortly after the accident happened, testified:

"I talked with him [Dahlem] and he stated that he was in the second lane of traffic, getting ready to turn into his high-way, and as he was about to turn he saw the car coming at a fast rate of speed so he stopped."

The jury understood that Dahlem was moving toward a position from which he could leave the highway and enter his driveway. He had successfully and lawfully placed himself in a marked traffic lane just south of the center of the highway. He had reached a point where he intended to make a further turn. Just how much of this intention had been expressed in an act does not appear, but he was ready to turn when he discovered the proximity of the Weyland car, and he testified: "I kept my car wholly in the second lane."

Each finding of a special verdict will control as to the particular facts found therein. "Of course, two separate findings in conflict with each other, substantially upon the same specific fact, would nullify each other; so the finding of a specific fact, inconsistent with a more general finding upon

the same subject, will, to the extent of such specific fact, cut down and limit such more general finding. In other words, some findings may be very broad and comprehensive, while others may be very narrow and specific, and hence of minor importance. . . . As indicated, the real question is how much is to be eliminated from that general finding by other specific findings bearing upon the question of the defendant's negligence; and whether, after such eliminations, there is still enough left to support the judgment." *Shenners v. West Side Street R. Co.* 78 Wis. 382, 47 N. W. 622.

The same presumptions follow special findings which attach to a general verdict. The fact found is presumed to be supported by a preponderance of the evidence and to have been established to the satisfaction of the jury. Specific findings, therefore, to overcome the more comprehensive findings, must exclude every theory which will sustain the broader and more complete finding. The specific finding is inconsistent only when, as a matter of law, it will authorize a judgment different from that which the more comprehensive will permit. To have this effect, all the issues upon which the more comprehensive finding might be sustained must be adversely covered. Clementson, Special Verdicts, p. 139.

The claim that *Lardeau v. Johnson,* 203 Wis. 509, 234 N. W. 710; *Spice v. Kuxman,* 206 Wis. 293, 239 N. W. 497; and *Hansen v. Biron,* 208 Wis. 215, 242 N. W. 498, furnish analogies to be followed in this case fails, because the facts of those cases are not similar to those found by the jury to exist in this case. In seeking an opportunity to turn into his own driveway, Dahlem in no way transgressed against any right in appellant or her driver. The left turn did not cause him to leave the traffic lane in which, under the circumstances, he had a right to be, and whatever he did do was done in the exercise of ordinary care. The cars did not collide. The appellant's driver was overtaking Dahlem's car at

a rapid rate of speed. When the possibility of a collision dawned on his mind, appellant's driver made an effort to avoid striking the car ahead of him, he swung to the left, applied his brakes, and the car skidded and turned over, causing serious injury to the appellant. The explanation by appellant's witnesses that Dahlem's car, when only a few feet ahead, suddenly turned directly in front of Weyland's car, when considered in connection with the speed at which Weyland admits he was going, and the fact that the cars did not collide, is improbable.

*By the Court.*—Judgment affirmed.