GROH, Plaintiff and Respondent, vs. W. O. KRAHN, INC., and another, Defendants and Respondents: GROH, Defendant and Appellant.

*January 12—February 9, 1937.*

**664**

D. J. *Regan* of Milwaukee, for the appellant.

For the respondent Lawrence L. Groh, Jr., there was a brief by *Wright & Thatcher* of Milwaukee, and oral argument by *Herbert S. Thatcher*.

For the respondents W. O. Krahn, Inc., and Maryland Casualty Company there was a brief by *Coleman & Barry* of Milwaukee, and oral argument by *John S. Barry*.

MARTIN, J. Appellant contends that the court erred: (1) In refusing to hold, as a matter of law, that plaintiff assumed the risk of his host's negligent driving. (2) In finding that

the plaintiff was emancipated at the time of the accident. (3) In refusing to hold that plaintiff could not maintain an action against his father. (4) In refusing to hold, as a matter of law, that the servant of the defendant W. O. Krahn, Inc., was guilty of negligence proximately causing the collision. (5) In denying the motion of the defendant Lawrence L. Groh for a new trial. Reference will be made to the errors assigned in the order stated.

In considering the first assignment of error as to the element of speed, the jury found that the negligent speed did not persist long enough to give plaintiff an opportunity to protest against such manner of driving. In this connection, it appears that the appellant's home was located six or seven blocks from the place where the collision in question occurred. The scene of the accident was in the outskirts of the city of Milwaukee in a sparsely settled neighborhood. The street in question was a three-lane, arterial highway. The jury had a view of the scene of the collision. The question of the speed limit in that area was left to the jury, the court giving proper instructions as to what constitutes a business and what constitutes a residential district, leaving it to the jury to decide which, if either, of these districts existed at the place the collision occurred. The jury made no specific finding as to what the speed limit actually was, merely finding that the appellant was negligent in respect to speed. It further appears that on the trip between appellant's home and the point of the collision, the appellant crossed a railroad track at a point approximately three blocks from the scene of the collision; that there was also a hill in the highway three or four hundred feet from the place of the collision; that appellant lessened the speed of his automobile in crossing the railroad track and in traversing the hill. It further appears that just prior to the collision, and as appellant's car was descending the hill, plaintiff stooped to light a cigarette.

Whether the jury concluded that the particular area was in a business district or a residential district, the excessive speed was very limited as to time and the distance traveled. Plaintiff testified he had driven frequently with his father prior to the date in question; that he drove a car himself; that there was nothing about his father's driving on previous occasions that gave him any cause for alarm. There is no evidence as to any previous negligent driving habits of the father. Plaintiff testified that from observation on previous occasions when he had driven with his father, he would say that he was a careful driver.

After a consideration of all the evidence, the court is of the view that the jury finding that the negligent speed did not persist long enough to give plaintiff an opportunity to protest against such manner of driving is sustained by the evidence. In *Bryden v. Priem,* 190 Wis. 483, 484, 485, 209 N. W. 703, the court said:

"It is claimed that because the plaintiff D. C. Bryden did not protest against the unlawful rate of speed at which defendant was driving during the quarter of a mile just prior to the accident, occupying about twenty-five seconds in time, he is guilty of contributory negligence as a matter of law. This is asking for an extreme, if not absurd, application of the doctrine. . . . We are not prepared to say that acquiescence on the part of an invited guest in speed but slightly in excess of the rate prescribed by law, for a period of twenty-five seconds, constitutes contributory negligence as a matter of law."

Plaintiff's momentary inattention as to speed or lookout while lighting a cigarette would not constitute negligence as a matter of law. *Cherney v. Simonis,* 220 Wis. 339, 345, 265 N. W. 203, and cases cited.

The appellant contends that the case of *Young v. Nunn, Bush & Weldon Shoe Co.* 212 Wis. 403, 249 N. W. 278, is in point on the question of assumption of risk. The cases

are clearly distinguishable. However, in the *Young Case,* speaking of the host-guest rule, the court said:

"The doctrine of these cases has been summarized in the *Knipfer Case* [210 Wis. 617, 246 N. W. 328, 247 N. W. 320] and there can be no doubt of the rule that the guest must take the host, with his defects of skill and judgment, and his known habits and eccentricities of driving, and in addition that the guest will be considered to acquiesce in any course of driving *that has persisted long enough to give him an opportunity to protest and thus indicate dissent or disapproval of the manner of driving.*"

Upon the evidence in the instant case, we cannot hold, as a matter of law, that plaintiff assumed the risk of his host's negligent driving.

Appellant contends that the court erred in finding that the plaintiff was emancipated at the time of the accident. The facts with respect to this issue were not in dispute. There was no request to have the issue submitted to the jury. Upon the undisputed evidence, the court made a finding that the plaintiff had been emancipated prior to the time of the collision in question. On the date of the accident, plaintiff was twenty years eleven and one-half months old; lived at his father's home, and paid for his board and room. In this connection, the father testified that his son was paying $6 a week for his board and room; that he had been paying for his board and room since he got out of school. He further testified:

"*Q.* You exercised no control over his funds at all, did you? *A.* Not at any time.

"*Q.* He came and went as he pleased in your home? *A.* Yes, sir.

"*Q.* You exercised no control over him in that respect? *A.* No.

"*Q.* He made no accounting to you of his earnings, other than pay you the board and his room, did he? *A.* No other.

"*Q.* He provided for himself; by that I mean he bought his own clothes out of his own money? *A.* Yes, sir.

"*Q.* Under your arrangement with your son that you had with him, it was your intention that he was to provide and look out for himself, was it not? *A.* That was his own lookout.

"*Q.* It was your intention that he be his own master and responsible to himself, alone, wasn't it? *A.* It was."

In *Prelipp v. Prelipp,* 203 Wis. 488, 490, 234 N. W. 730, the court said:

" 'Not only may a parent emancipate his child, so as to entitle it to receive its earnings from third persons, but "emancipation may be implied even when the minor resides at home and works for his father, from a promise on the part of the father to pay him for his services during his minority, so that the minor may maintain an action against the father even for such services. . . ." ' "

"Implied emancipation may be inferred from such circumstances and conduct on the part of the parent as reasonably lead to the conclusion that he expects the child to provide for himself with no accounting to the parent for his earnings." *Patek v. Plankinton Packing Co.* 179 Wis. 442, 447, 190 N. W. 920.

To the same effect, see *Caskey v. Peterson,* 220 Wis. 690, 694, 263 N. W. 658, and cases cited.

The finding of the trial court on the issue of emancipation is fully sustained by the testimony.

Appellant further contends that, even though plaintiff was emancipated at the time of the accident, he could not maintain the action against his father. This contention is made on the authority of *Wick v. Wick,* 192 Wis. 260, 212 N. W. 787, and *Zutter v. O'Connell,* 200 Wis. 601, 229 N. W. 74. However, these cases did not involve the situation of an emancipated minor. Whether a minor who has been emancipated can sue his parent in tort for negligence has not been decided by this court. We must conclude that the finding of the trial court means a full emancipation of the respondent.

His mother had died in 1930 or 1931. The father testified that it was his intention that the son be his own master and responsible to himself.

Webster's New International Dictionary (2d ed.) defines the word "emancipate" thus: "To free or release (a child) from the paternal power, making the person released *sui juris*." As to the effect of emancipation, the general rule is stated in 46 C. J. p. 1345, § 199:

". . . That emancipation of the child leaves the child, so far as the parent is concerned, free to act on its own responsibility and in accordance with its own will and pleasure, with the same independence as though it had attained majority."

In *Iroquois Iron Co. v. Industrial Comm.* 294 Ill. 106, 109, 128 N. E. 289, 290, the court said:

"Emancipation works a severance of the filial relation as completely as if the child were of age."

In *Rounds Bros. v. McDaniel,* 133 Ky. 669, at p. 676, 118 S. W. 956, 958, the court said:

". . . When a child has been emancipated, he occupies the same legal relation toward the parent as if he had arrived at full age."

To the same effect, see *Taubert v. Taubert,* 103 Minn. 247, 114 N. W. 763, 764; *Crosby v. Crosby,* 230 App. Div. 651, 246 N. Y. Supp. 384, 387; *Fowlkes v. Ray-O-Vac Co.* 52 Ga. App. 338, 183 S. E. 210, 212; *Cafaro v. Cafaro,* 14 N. J. Misc. 331, 184 Atl. 779, 780; *Lo Galbo v. Lo Galbo,* 138 Misc. 485, 246 N. Y. Supp. 565; *Memphis Steel Construction Co. v. Lister,* 138 Tenn. 307, 197 S. W. 902, 20 R. C. L. p. 611, § 21; 1 Schouler, Domestic Relations (6th ed.), p. 904, § 809. In *Crosby v. Crosby, supra,* it is said:

"The courts have recognized that the reasons given for denying the right of action between a parent and an unemancipated child did not exist after majority or emancipation."

In *Taubert v. Taubert, supra,* it is said:

"The general rule is that a minor cannot sue his parent for a tort; but, if he has been emancipated, he can. . . . The disability of a minor to maintain an action for tort against his parent arises from the family relation, which may exist intact, although a minor may have been given the right to receive as his own his wages; hence, to take a case out of the general rule, there must be not only a waiver of the minor's services, but a surrender of parental control over him."

The general rule is that a fully emancipated minor may maintain an action in tort against his parent. The rule announced in *Wick v. Wick, supra,* and *Zutter v. O'Connell, supra,* must be limited to cases involving unemancipated minors. We hold, under the finding of emancipation made by the trial court, that the plaintiff-respondent may maintain this action against his father.

Appellant contends that the servant of the defendant W. O. Krahn, Inc., was negligent as a matter of law and that such negligence was a proximate cause of the collision. The plaintiff-respondent makes the same contention, but he has not appealed from that part of the judgment dismissing his complaint as to the defendant W. O. Krahn, Inc., and its insurance carrier. The appeal, so far as those respondents are concerned, reaches only that part of the judgment dismissing the cross complaint of the defendant-appellant, Lawrence L. Groh.

Mr. David, the driver of the defendant Krahn's truck, testified that he was driving south on Seventy-Sixth street in the west lane of traffic, that his truck was loaded with broken concrete which he intended to dump on the east side of Seventy-Sixth street; that before he commenced to turn to the left, he slowed down his truck to about eight miles per hour to permit two vehicles which were following to pass; that when he commenced making the turn to cross the center and east lane of traffic, he had a clear view south to the crest of the hill,

a distance of between two and three hundred feet; that he saw no vehicle approaching from the south. He testified that at the time of the collision his truck was completely off the concrete and had stopped. He further testified that his attention was attracted to the Groh car by the sound of brakes, and that at that time the truck was standing still. He estimates that the Groh car was then about eighty feet south of the point of the collision.

It appears without contradiction that the Groh car skidded a distance of seventy-eight feet. Appellant's car struck the truck immediately in front of the rear right wheel and the rear spring hanger. There was nothing to prevent the Groh car from going around the end of the truck. There is no testimony that any vehicles were approaching from the north in either the center or west lane of traffic. Appellant testified that from the crest of the hill, which he estimates was approximately two hundred feet from the point of collision, he had a clear view to the north; that the pavement was dry; that he did not see the truck before it started to turn to the left; that he saw it crossing the east lane; that he was then driving his automobile at about thirty miles per hour and immediately put all of his weight on the brakes; that when he jammed his brakes on, his car was between seventy and eighty feet from the point of collision. There is testimony that the skid marks were located about two and one-half feet from the east edge of the road and continued in a fairly direct line. Several witnesses testified as to the location of the truck and the car immediately following the collision. The jury found no negligence on the part of the driver of the truck. The trial court has sustained the jury verdict.

The appellant asserts that *Lardeau v. Johnson,* 203 Wis. 509, 234 N. W. 710, and *Hansen v. Biron,* 208 Wis. 215, 242 N. W. 498, are directly in point. The facts in the two cases are clearly distinguishable. On the testimony in the instant

case, the issue as to the truck driver's negligence was for the jury. In *McCaffrey v. Minneapolis, St. P. & S. S. M. R. Co.* 222 Wis. 311, 321, 267 N. W. 326, 330, 268 N. W. 872, the court said:

" . . . 'When a verdict is taken and judgment is entered thereon, the sole question for determination in that respect on this appeal is whether there is any credible evidence which in any reasonable view fairly admits of an inference that supports the jury's findings. *Steubing v. L. G. Arnold, Inc.,* 210 Wis. 513, 246 N. W. 554;' and that: '. . . "If there is any credible evidence, which under any reasonable view will support or admit of an inference for or against the claim or contention of any party, then what is the proper inference to be drawn therefrom is for the jury, and the court should not assume to answer such questions by substituting another answer after the verdict is returned" (*Rupert v. Chicago, M., St. P. & P. R. Co.* 202 Wis. 563, 232 N. W. 550, 552).' *Borg v. Downing,* 221 Wis. 463, 266 N. W. 182, 183; *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 115, 116, 228 N. W. 741."

We have carefully considered the alternative motions made by the appellant after verdict. We are of the view that they were properly denied. One ground assigned for a new trial is that the damages awarded are excessive. It appears that the force of the collision threw the hood of the car in which plaintiff was riding through the windshield, the hood striking plaintiff across the face over his mouth, separating the flesh from the bone, inflicting a five-inch horizontal gash which required nineteen stitches to close. The cartilage of the nose was displaced from the bone; several teeth were chipped and one was broken off. Plaintiff suffered abrasions on the back of his head, stiffness of his back and neck, abrasions on both knees and on his right upper arm. The scar produced by the cut is about three and one-half inches in length and is permanently visible. The blow dislodged plaintiff's nose to the

right, making the right nasal passage about one fourth the width of the left, which interferes with his breathing and will necessitate an operation to correct. Shortly following the accident, there developed a swelling in the right side of plaintiff's face which has recurred about every three months with increasing intensity over a period of about two years. It appears that the swelling usually lasts from one and a half to three weeks. It was necessary to remove the teeth which were chipped and broken in the accident and to extract several teeth which became infected as a result of an infection in plaintiff's jaw. Later, it became necessary to operate and remove a diseased portion of his upper jawbone. The two doctors, who treated plaintiff immediately after the accident and at later intervals when the swelling occurred in his face, testified that the infection of his jaw causing the periodical swelling of the face is the result of a blow received in the face at the time of the collision. Dr. Fleming testified:

"The diseased condition of the bone would cause, in my opinion, considerable pain. I cannot say to a reasonable medical certainty that the swelling and that condition is apt to continue. We do not know that. We know that in osteomyelitis it sometimes takes years before the condition heals up, but I do not know to a reasonable certainty whether or not it is likely to continue."

Plaintiff testified that following the accident and for a period of two years, he suffered from severe headaches two or three times a week which caused him considerable discomfort; that at the time of the trial in March of 1936, he had occasional swelling in his face, though not as frequently as before the operation.

Plaintiff is by occupation a salesman and is constantly obliged to converse with strangers. The disfigurement caused by the scar across his upper lip and the displacement of his

nose is a cause of constant humiliation. While the damages awarded are substantial, we cannot say they are excessive. We find nothing to suggest that the verdict is the result of passion and prejudice on the part of the jury.

The verdict and judgment must stand.

*By the Court.*——Judgment affirmed.