Haight (Geraldine Pagenkopf), Plaintiff and Respondent, vs. Luedtke and another, Respondents: Haight (William C.) and another, Defendants and Appellants.

*December 2, 1941—January 13, 1942.*

390

For the appellants there were briefs by *Genrich & Genrich,* attorneys, and *Herbert L. Terwilliger, James A. Fitzpatrick,* and *William J. Hoffmann* of counsel, all of Wausau, and oral argument by *Mr. Terwilliger.*

For the respondent Geraldine Pagenkopf Haight there was a brief by *Boileau & Loeffler* of Wausau, and oral argument by *G. J. Boileau.*

For the respondents Herbert C. Luedtke and Workmens Mutual Insurance Company there was a brief by *Bird, Smith, Okoneski & Puchner,* attorneys, and *Richard P. Tinkham, Jr.,* of counsel, all of Wausau, and oral argument by *Mr. Charles F. Smith* and *Mr. Tinkham.*

MARTIN, J. Appellants contend that the court erred in denying their motion for a nonsuit; in denying their motion for a directed verdict; in denying their motions after verdict to change the answers as returned by the jury. Appellants

argue that plaintiff, as a matter of law, assumed the risk and was also guilty of contributory negligence, and that defendant Luedtke was guilty of negligence as a matter of law.

The facts are not much in dispute. It appears that on Sunday morning, March 16, 1941, at approximately the same time, the defendant Luedtke, accompanied by his wife and mother, left Wausau to visit his father who was confined in a hospital at Marshfield; and defendant Haight, accompanied by Miss Pagenkopf (now his wife), left Wausau to go to his home in Marshfield for dinner. In making their journey from Wausau to Marshfield both cars traveled west on Highway No. 29 to a point approximately twenty miles west of Wausau where said highway is intersected by Highway No. 97, which runs in a northerly and southerly direction. It was a stormy day, the wind from the west blew snow upon the highway. However, neither car experienced any difficulty in traveling west on Highway No. 29. No particular hazard was encountered until after the cars had turned south from the intersection on Highway No. 97. The wind, being from the west, caused snowbanks to form at certain places extending across Highway No. 97 which made driving difficult and obstructed vision to the south. There is some conflict in the evidence as to the distance south of the intersection to the point where the collision occurred. The Luedtke car traveled some distance ahead of the Haight car all the way from Wausau to where the collision occurred. From Wausau to the intersection of Highways Nos. 29 and 97 Haight drove between forty and forty-five miles per hour. As he reached the intersection and turned south plaintiff noticed the blanket of snow accumulating across Highway No. 97. She cautioned him to "be careful." He continued at about twenty-five miles per hour for approximately three hundred feet. He then reduced the speed to about twenty miles per hour. With the speed so reduced he ran into a blanket of snow which had

accumulated across Highway No. 97. He traveled a further distance of approximately seventy-five feet in this blanket of snow and came into collision with the rear of the Luedtke car which was stopped at that point. As Haight's car encountered this snowdrift his vision to the south was almost entirely obscured. It appears to be conceded that for some time preceding the date in question the brakes on his automobile were in a defective condition, of which fact plaintiff was unaware and learned of it some time after the accident.

The impact of the Haight car pushed the Luedtke car a distance of twenty-five to thirty feet from the point at which it stood when struck. Haight testified:

"I would say we drove into the snow blanket about seventy-five feet before we had the collision. . . . During that seventy-five feet there was a constant blanket of snow with the exception of just before we hit there was a little clear space and I saw the car [Luedtke's] sitting there."

The Haight car traveling at twenty miles per hour would cover a distance of seventy-five feet in two and one-half seconds.

Mr. Luedtke testified that after he had turned onto Highway No. 97 he brought his car to a stop about fifty feet from the intersection to observe driving conditions; that he stopped there for about two minutes and then noticed that visibility had cleared; that he could then see between three hundred and four hundred feet to the south on Highway No. 97 and decided to drive on. He further testified that his visibility to the south became obscured at a point between three hundred and four hundred feet south of the intersection; that as he entered the veil of snow it was thin and he was able to see thirty to forty feet ahead of his car; that finally visibility ceased entirely and he was forced to bring his car to a stop; that he did bring it to a stop on his right-hand edge of the road.

Mr. Haight testified that he did not know he was getting into a thick cloud of snow until he was actually in it. We find no testimony as to the depth of the snow on the traveled portion of Highway No. 97. It appears that prior to the date in question the snow had been plowed out. The concrete surface was twenty feet in width with a clear shoulder on the east side between five and six feet in width. When the collision occurred the Luedtke car was standing with its left wheels between three and four feet west of the center line of the highway, thus leaving a passage for other vehicles of at least eighteen feet on the east side of the Luedtke car. It appears that other cars ahead of the Luedtke car had gone through the blanket of snow at the point in question. Mr. Luedtke brought his car to a stop with the intention of getting out for the purpose of determining whether he should proceed farther or turn back. He had just opened the door of his car to get out when his car was struck by the Haight car.

It is of no particular importance whether this collision occurred four hundred or five hundred feet south of the intersection. The important fact bearing on Mr. Haight's negligence and the plaintiff's assumption of risk and contributory negligence is the distance that Haight drove into the snowdrift after his vision became totally obscured. In this connection it is important to note that appellants do not attack the jury's findings as to Haight's negligence. The plaintiff testified that she appreciated the danger in driving through the veil of snow being blown across the highway. Obviously, for that reason she cautioned Mr. Haight to "be careful." Thereafter, he did proceed for a distance of several hundred feet at a speed of twenty-five miles per hour, later reduced to twenty miles per hour. The Haight car traveled the total distance from the intersection to the point of the collision in about twelve seconds. After Haight got into the thick cloud of snow which totally obscured his vision, he drove a distance of seventy-five feet, which distance at twenty miles per hour

would be covered in two and one-half seconds. In *Bryden v. Priem,* 190 Wis. 483, 484, 209 N. W. 703, the court said:

"It is claimed that because the plaintiff D. C. Bryden did not protest against the unlawful rate of speed at which defendant was traveling during the quarter of a mile just prior to the accident, occupying about twenty-five seconds in time, he is guilty of contributory negligence as a matter of law. This is asking for an extreme, if not absurd, application of the doctrine. . . . We are not prepared to say that acquiescence on the part of an invited guest in speed but slightly in excess of the rate prescribed by law, for a period of twenty-five seconds, constitutes contributory negligence as a matter of law."

In *Groh v. W. O. Krahn, Inc.,* 223 Wis. 662, 271 N. W. 374, the court sustained the jury's finding that the father's negligent speed for a distance of three to four hundred feet did not persist long enough to give the son an opportunity to protest.

In *Rudolph v. Ketter,* 233 Wis. 329, 289 N. W. 674, the jury found that defendant was negligent in increasing the danger assumed by the plaintiffs as to speed, control and management, and as to line of travel; and further found that the plaintiffs assumed the risk of injury, that each was negligent for her own safety, and that such negligence was a cause of the plaintiffs' injuries. The plaintiffs moved to change the jury's answers to the questions relating to assumption of risk and contributory negligence. From a judgment on the verdict dismissing the actions the plaintiffs appealed. From the evidence it appeared that defendant drove his car to the left of the center of the highway a distance of approximately one thousand feet, and upon observing an approaching car defendant turned to his right and went into the ditch along the east side of the highway. The car continued in the ditch for a distance of about one hundred twenty-five feet when it came into contact with a culvert, by reason of which collision plaintiffs sustained their injuries. It appeared that de-

fendant's car traveled the total distance of one thousand one hundred twenty-five feet on the highway and in the ditch in approximately twenty seconds. This court held that there was no evidence to sustain the jury's findings as to assumption of risk and contributory negligence. The court said (p. 334):

"We are of the view that the plaintiffs' motions to change the jury's answers to the questions relating to assumption of risk and contributory negligence should have been granted and each plaintiff be given judgment for the full amount of damages as assessed in each action by the jury."

In *Helgestad v. North*, 233 Wis. 349, 289 N. W. 822, the action was for injuries sustained by automobile guests. There was evidence that the defendant host was driving at a speed of twenty-five to thirty miles per hour on a snowy night; that he slowed down to between twenty and twenty-five miles on overtaking another car, then increased his speed to thirty to thirty-five miles to pass the car, and after passing it applied his brakes in an effort to slow down to negotiate a curve ahead. The car skidded off the road. The jury's verdict was in favor of the plaintiffs, which also found that defendant's negligence did not persist long enough to give the plaintiffs an opportunity to effectively protest against defendant's manner of driving. There was a conflict in the evidence as to visibility. There was evidence to the effect that at times there was a light fall of snow and at other times a heavier fall of sticky snow. The appellants contended that the plaintiffs assumed the risk as a matter of law and were precluded from recovery. The court held that the question of the plaintiffs' assumption of risk was for the jury and that there was no basis upon which it could be claimed that plaintiffs were guilty of contributory negligence as a matter of law.

Appellants cite *Knipfer v. Shaw*, 210 Wis. 617, 246 N. W. 328, 247. N. W. 320, as applicable in the instant case to the

point that plaintiff assumed the risk as a matter of law. In that case the jury acquitted the plaintiff of any negligence, and further found that, in riding in defendant Knipfer's automobile under the existing conditions, she did not assume the risk of injury. From a judgment in plaintiff's favor defendant appealed. This court held that upon the undisputed facts disclosed by the evidence the plaintiff had assumed the risk, and ordered judgment for the defendant notwithstanding the verdict. But the facts in that case are clearly distinguishable from the facts in the case at bar. In that case, the plaintiff was riding with her husband from Beloit, intending to go to Kenosha. When they reached Lake Geneva the fog was so dense that the advisability of proceeding further was discussed. They decided to go on. After leaving Lake Geneva the fog grew worse. The plaintiff testified that the fog "was terrible." All of the witnesses described the condition as "terribly foggy." From Lake Geneva to the place of collision was thirty-five miles. Plaintiff and her husband discussed the foggy condition. The windows on both sides of the car were lowered so as to permit the husband to watch the black line on the pavement and her to watch the edge of the concrete. Neither plaintiff nor her husband saw the Shaw car until it was right upon them. It seems obvious that traveling a distance of thirty-five miles in such a dense fog, when plaintiff and her husband could not see the headlights of an approaching car until it was nearly upon them, makes about as strong a case of assumption of risk on the part of plaintiff as could be conceivable—at least it furnishes no authority for the instant case.

The case of *Walker v. Kroger Grocery & Baking Co.* 214 Wis. 519, 252 N. W. 721, and *Kauth v. Landsverk,* 224 Wis. 554, 271 N. W. 841, also relied upon by appellants, are clearly distinguishable from the instant case. In the latter case the jury found that plaintiff assumed the risk of

injury. This court held that under the facts and circumstances disclosed it was a jury question.

It is considered that upon the evidence in the instant case the questions as to plaintiff's assumption of risk and contributory negligence were issues for the jury, and that the jury's answers to both questions are supported by credible evidence. It is elementary that the findings of the jury must stand as verities if there is any credible evidence to support them.

Appellants contend that defendant Luedtke was guilty of negligence as a matter of law. They base their contention on sec. 85.19 (1), Stats., which provides:

"No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway of such highway, provided that in no event shall any person park, stop or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of no less than fifteen feet upon the roadway of such highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction along such highway."

The undisputed testimony shows that there was an unobstructed passage of not less than eighteen feet of the roadway to the east of the Luedtke car. The only obstruction was the veil of snow blowing across the highway. There is no evidence to indicate the depth of the snow on the traveled portion of the highway. It does appear that other cars had succeeded in getting through from both the north and south shortly before the Luedtke car stopped. As to there not being a clear view of the Luedtke car after it had stopped, for a distance of two hundred feet in each direction, that provision of the statute has no application under the facts in the instant case. The statute was not intended as an absolute require-

ment under any and all circumstances. Sec. 85.10 (30), defining "parking," provides for certain exceptions. It reads:

"The stopping or standing of a vehicle, whether occupied or not, upon a highway otherwise than (a) temporarily for the purpose of and while actually engaged in loading or unloading, (b) when making necessary repairs, or (c) in obedience to traffic regulations or official traffic signs or signals."

Luedtke stopped his car and had just opened the door to get out to observe the condition of the highway ahead and determine whether to proceed or turn back.

In *Johnson v. Prideaux,* 176 Wis. 375, 187 N. W. 207, the defendant found himself suddenly enveloped in a dust cloud caused by a passing car. In bringing his car to a stop and because of the cloud of dust he got over to the left of the center of the road where his car was struck by the plaintiff's car coming from the opposite direction. The court held as a matter of law that defendant driver was not negligent. At page 378 the court said:

"It is plain that the decision of the trial court held him [defendant] to an impossible degree of care, owing to the complete obstruction of his vision by the dust. The court applied to him the same rule that would obtain if his vision was not obscured."

In *Walker v. Kroger Grocery & Baking Co., supra,* p. 528, the court held that temporarily stopping a truck on the roadway to enable the driver to ascertain the cause of a rumbling was not unlawful nor negligence constituting a cause of the collision.

Appellants' argument leads to the conclusion that Luedtke must be held negligent as a matter of law whether he stopped his car or proceeded ahead. If he proceeded ahead with his vision totally obscured he would be endangering the safety of other users of the highway. He acted in a most prudent manner. When he got onto Highway No. 97 and had proceeded some distance south he stopped his car for about two

minutes to observe conditions ahead. The blowing snow cleared, which restored clear vision for a distance of three hundred to four hundred feet, and he decided to continue. Suddenly his car was in a veil of blowing snow which almost totally obscured his vision. He testified: "When we started up after stopping south of the intersection we thought we could probably get through, that it was just a gust of snow like we had struck on 29 and where we got through easily."

"When the situation on a highway is such that one's vision is completely obscured, it is one's duty to slow down or even stop until the cause of such obscured vision is at least in part removed. *Johnson v. Prideaux,* 176 Wis. 375, 187 N. W. 207; *Leonard v. Bottomley,* 210 Wis. 411, 245 N. W. 849; *Pietsch v. McCarthy,* 159 Wis. 251, 150 N. W. 482. Whether one's vision is completely obscured by blinding lights, dust, or dense smoke seems quite immaterial." *Mann v. Reliable Transit Co.* 217 Wis. 465, 468, 259 N. W. 415.

The defendant Luedtke cannot be held negligent as a matter of law. The issue as to his negligence was for the jury. There is credible evidence to sustain the verdict.

*By the Court.*—Judgment affirmed.